MASSIMO MARINI *vs.* MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION.

JULY 16, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is a bill in equity brought to have canceled a certain release executed by the complainant to the respondent. After a hearing in the superior court on bill, answer, replication and proof, a decree was entered denying and dismissing the bill. From the entry of that decree the complainant has duly prosecuted his appeal to this court.

It appeared that on November 16, 1940 the complainant was insured under an accident and health policy issued by the respondent against, among other things, loss of time, resulting directly from bodily injuries sustained through purely accidental means. He had held this policy for about three years and it was in full force and effect on the above date. The complainant was a baker, and while engaged in that employment on that date slipped on a wet floor and fell on his back. He continued to work until November 28, 1940 when he consulted a doctor because his back was causing him pain. The doctor, diagnosing his injury as a probable sprained lower back, advised the complainant to stop work and he did so, doing only three or four days' work between that date and March 25, 1941 when the release which he is seeking to have canceled was executed for the sum of $200 and his policy was surrendered to the respondent. The complainant's injury, however, did not respond to treatment and in June 1941 x-ray photographs were taken of his back. The evidence as to just what injury these showed was conflicting. However, they did show an injury to vertebrae in the lower part of the back. Whether that injury amounted to an actual fracture or only to a

wedging, narrowing or compressing of the bones is not clear.

The complainant prayed that the said release be canceled on the ground that he was induced to execute it because of fraud and misrepresentation on the part of the respondent, and because it was executed under a mutual mistake of fact as to the extent of his injuries. The trial justice found that the evidence failed wholly to support the complainant's allegation of fraud and misrepresentation, and that the settlement evidenced by the release was not based upon the idea of either party as to the extent of the complainant's injuries, but was to compromise their differences.

In general it appeared from the evidence that the complainant, who was illiterate and who did not consult any attorney in making the settlement in question, apparently relied chiefly on the advice of the doctor and somewhat on the friendship of the respondent's agent who had sold him the policy, and who was of his own nationality. The doctor who was consulted by the complainant was his own family physician and was not sent to him by the respondent. This doctor had never done any work for the respondent but had made some life insurance examinations for the United Benefit Life Insurance Company, a separate corporation which, however, occupied the same office and had the same office personnel as the respondent and was apparently in some way affiliated with the latter. The respondent never had the complainant examined by any doctor which it selected, but accepted the reports of the doctor in question.

When he examined the complainant on November 28, 1940 he diagnosed the injury as "contusion of the left hip, and probably sprained lower back, abrasion and contusion of the shoulder." Shortly thereafter he filled out for the complainant a claim report which was sent to the respondent. In this paper the injury was described as "Injury to back" and it was stated that all treatments were at the doctor's office. On January 3, 1941 the doctor filed a supplementary report for the complainant with the respond-

ent. He stated therein that the complainant was totally disabled from doing any work and had been so disabled since November 29 because of "pain in back and left sacro-iliac region". On March 21, 1941 the doctor gave to an adjuster from the home office of the respondent a third report, complainant's exhibit 6, which read as follows: "Masimo Marini has been under my care from November 28th, 1940. Total disability from November 28th to February 1st, 1941. Partial disability from February 1st. At present he is able to do work which does not require heavy lifting. At no time confined to home."

A short time before the release in question was executed the adjuster attempted to make a payment to the complainant on the basis of what such adjuster claimed was due according to the terms of the policy. Under an illness and accident provision in the policy, the adjuster first offered the complainant $103 and then $115, the latter figure taking into consideration the bruises and contusions suffered by him. The complainant, however, stated that he would do nothing about the matter until he had consulted his doctor. A day or two later the complainant called on the adjuster and stated that he did not want to accept $115 in settlement of his claim, and was told to consult again with his doctor, his lawyer, if he had one, or his friends.

A short time thereafter the doctor and a relative of the complainant talked with the adjuster about a settlement. The respondent at that time contended that the complainant's injury came under the portion of the policy denominated Additional Provisions (a) and Part L, which dealt with a sprained or lame back which did not confine the insured continuously within doors. The maximum payment under this provision alone was apparently $120 covering a period of three months only. Finally, through the agent who had sold the complainant his policy, the figure of $175 was discussed and the adjuster agreed to pay this amount in settlement of the claim. The complainant, however, desired $200 and the parties finally closed the matter by

the payment of that sum in consideration of the release executed by the complainant and the surrender of his policy. He, however, now asserts that under the policy the injury to his spine, as finally discovered, would have ·entitled him to a payment of approximately $300 as of the date the release was executed. It also appeared at the trial in March 1942 that the complainant was then unable to work and that he was compelled to wear a brace for his back.

We will confine our present consideration to the issue of mutual mistake as, in our judgment, that issue is controlling. No case which has been decided by this court and which is in point on that question has been brought to our attention. Cases from other jurisdictions, while helpful,— see *McIsaac* v. *McMurray*, 77 N. H. 466; *Dominicis* v. *United States Casualty Co.*, 116 N. Y. S. 975,—are not necessarily determinative of the questions raised herein. Upon examination it will be found that they often rest upon their own peculiar facts, upon certain provisions of the accident policy before the court, or upon the form of the release or settlement made by the parties. This is particularly true of cases brought against insurance companies under accident policies where the insured has settled with the insurer under a mistake as to the extent of his injury. See notes 48 A. L. R. 1462 and 117 A. L. R. 1022.

In the instant cause the liability of the respondent to the complainant for some amount was not questioned. The determination of that amount depended, however, upon the nature and extent of the complainant's injuries as covered by the provisions of his policy. This clause is thus distinguishable from those in which the liability of the defendant was in dispute and the settlement took that fact into account. The principal question in the present cause, therefore, is whether the parties, under a mutual mistake of an existing material fact as to the extent of the complainant's injuries, were contracting with reference to certain specific injuries, on the assumption that they were the only actual injuries, and whether the nature of such injuries, as later

discovered, was not within their contemplation, or whether the settlement was intended as a compromise and release of all claims between them, the nature and extent of the injuries not being the chief matter upon which the parties were contracting.

At the conclusion of the hearing the complainant's attorney, relying on G. L. 1938, chap. 541, § 5, requested the trial justice to make a finding of fact on the issue of mutual mistake in relation to the nature and extent of the plaintiff's injuries. During the colloquy which ensued the trial justice stated that "the settlement was not based upon the idea of either as to the exact extent or degree of the injuries but was to compromise the differences that evidently existed between them, as to what the petitioner was entitled to under the terms of the policy." The trial justice did not make any clear, definite finding on the said issue of mutual mistake of fact, as requested. Because of his expressed view of the intent of the parties in making the settlement he apparently felt that such question was not material. We are, therefore, not aided by any finding by him on the specific issue of mutual mistake of fact, and we are forced to consider independently the evidence bearing on that issue.

We realize that the complainant is seeking to have canceled a general release which he voluntarily executed for a consideration. However, after a careful consideration of the evidence, we are of the opinion that the complainant has sustained the burden of showing that all those interested assumed that his injuries consisted only of a sprained or lame back together with certain rather extensive bruises and contusions, and that the parties, acting on that assumption, intended to settle and did settle for only those known specific injuries as the basis for the compromise. They took into consideration merely the apparent extent of the injuries, and no question of liability as such was raised. It is also clear from the evidence and is admitted that no one learned of the real extent of the complainant's spinal in-

juries until several months after the settlement in question had been made, and that such injuries were in no way in the contemplation of the parties when the release was executed. Questions of unexpected development from a known injury, or of a mistake in judgment as to the length of time necessary for a recovery from such an injury are not raised by the evidence in this cause.

It appeared from the complainant's testimony that when he was first examined by the doctor the latter stated that he thought the injury was a sprained back; that the complainant relied on the doctor and sought his advice in the ensuing negotiations with the respondent; that on the day the release was executed "He (the doctor) tell me, 'You better take the money because I don't find you so bad. I don't know what it is.' He says, 'Well, if you go to Court I don't know what I got to say', because he don't know himself", and that although his back still was painful he took the doctor's advice.

The complainant also testified, among other things, that he had never gone to school; that he could not read English; that the respondent's agent, who had sold him the policy and who paid him the $200 in consideration for the release and the surrender of the policy, did not read or explain the release to him at the time it was executed. The complainant's wife, who acted as a witness at the execution of that instrument, corroborated the complainant as to the above conduct of the respondent's agent. In his testimony the latter admitted that he did not read the release to the complainant or explain it in detail, but that he, the agent, did explain the release and its effect in general terms, and that he was satisfied that the complainant understood fully what he was doing when he signed that document.

The doctor testified in part that without the use of the x-ray he diagnosed the complainant's injury as a probable sprained lower back together with certain contusions and bruises of the left hip and shoulder; that it was not until June 1941 that any spinal injury was discovered; that his

reports to the respondent were based on his original diagnosis and that they would have been different if at the time they were given he had known of the spinal injury.

The claim adjuster hereinbefore mentioned, though not present at the actual execution of the release, was the representative of the respondent who had interviewed the complainant and who had the authority to authorize and did authorize the settlement. He referred in his testimony to the fact that they would pay more than they thought they owed "merely to buy our peace". However, he testified as follows in respect to the settlement as finally consummated: "Q. Now, the final settlement, however, was based on the theory that Dr. Corvese—on the medical testimony that Dr. Corvese gave you and as contained in Exhibit 6, isn't that so? You didn't have any other medical testimony? A. No. Q. You relied solely on Dr. Corvese's medical testimony? A. Primarily, Yes. Q. And you settled it on the theory that there was a lame back or a sprained back? A. That was the proof of claim, Yes. Q. And that was the theory on which the case was settled? A. That was the theory on which the actual claim was computed. The case was finally settled by an additional payment above the amount asked for in the proofs of claim. Q. In other words, you relied solely on the proofs of claim? A. That is all I had to rely on. Q. And that is all you did rely on? A. That's true. Q. And outside of a black and blue bruise they showed nothing but a sprained or lame back? A. As I recall the proofs only showed a sprained or lame back, Yes. This was the explanation of Mr. Marini as to the abrasions —they were not contained in the proofs."

The agent of the respondent who paid the $200 to the complainant and who attended to the execution of the release testified that he was authorized to act by the said claim adjuster and then continued his testimony as follows: "Q. In other words, if he had a spinal injury caused by an accident, it would have been worth a whole lot more money, is that right? A. According to the policy, Yes.

I didn't know it was a spinal injury at that time. Q. Had you known it—A. Had I known it I wouldn't have had the man sign the release. Q. In other words, you had him sign solely on the basis that it was a sprained back? A. That's right. Q. If you had known there was a spinal injury you wouldn't have had him sign? A. No, I wouldn't have." He also testified that he thought the injury was a sprained lower back, saying: "Q. And that's what you thought it was? A. That's what Dr. Corvese told me it was. Q. And that's what you based this whole settlement on, is that right? A. Yes, that's true."

Finally, in a letter from the respondent to the complainant's attorney written after the nature of the real injury to the complainant's back had been discovered, the following language appears: "There were serious questions of coverage but, in view of the circumstances, we did go ahead and make a compromise adjustment based upon the report of the attending physician."

Considering the evidence as a whole and the reasonable inferences to be drawn therefrom, we are of the opinion that the settlement was made and the release was executed under a mutual mistake, in the minds of the parties, consisting of their ignorance of a material existing fact as to the nature and extent of the complainant's injuries. The negotiations as to the amount finally paid in settlement apparently centered on the question of which provisions of the policy were applicable under the circumstances and how much should be allowed for the bruises and contusions.

If the respondent paid any money to purchase peace, it is clear that it was to be from liability under the terms of the policy based on injuries known to the parties and discussed by them, and was not to purchase peace from all possible liability from some unknown and different injury. Although, according to our established rule, the decision of a trial justice in a case of this kind is ordinarily entitled to great weight, yet under our view of the evidence herein, we find him to be clearly wrong in holding that the settle-

ment was to compromise all possible present and future differences between said parties.

In our judgment, the complainant is entitled to have the prayers of his bill granted on condition that he pay back to the respondent, as he offers to do in said bill, the sum of $200.

The complainant's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with direction to enter a decree in accordance with this opinion.

*Joseph Mainelli, Aram A. Arabian,* for complainant.
*Henry M. Boss, J. Whitney MacDonald,* for respondent.