PETER LEON DENISEWICH *vs.* ABBOTT GLASS COMPANY.

MAY 15, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

POWERS, J. This is an employee's original petition for compensation benefits brought pursuant to G. L. 1956, §28-

35-12, as amended. It was heard by a single commissioner, who thereafter entered a decree adjudging the petitioner to have suffered a compensable injury of unknown extent but denying compensation for failure to prove any loss of earning capacity. On appeal therefrom the full commission entered a final decree denying and dismissing the petition and petitioner has seasonably prosecuted his appeal to this court.

It appears that petitioner on December 19, 1960 while in the employ of respondent as a combination truck driver, unloader and rigger, was assigned to deliver four pallets of window glass to the Alda Manufacturing Company in East Hartford, Connecticut. The day was stormy, the petitioner was working without an assistant, and because of the accumulated snow he was unable to back up to the unloading platform customarily used. He was driving a camel-back type of truck with a low bed two and a half feet below the height of the unloading platform, a circumstance for which the truck was not properly rigged.

The petitioner testified that two of the pallets weighed twelve hundred pounds apiece and each of the others fifteen hundred pounds; that because he lacked the proper equipment it was necessary to hoist the pallets by an improvised rig requiring manual labor which he characterized as "All bull work with the pinchbars, crossbars, pinching up that two, two and a half foot rise"; that instead of the usual ten or fifteen minutes the work took some two and a half hours; and that during the unloading of the third pallet he experienced a sharp pain in his back and left shoulder. He finished delivery to Alda Manufacturing Company and continued on to his next stop despite the pain, believing that he could work it off.

He continued to work each day thereafter until December 27, when he advised general manager Casicione that he was leaving work to consult a doctor. It is his testimony that the general manager agreed that he should do so.

The record discloses that on the same day he consulted Dr. N. J. Malinou, who treated him until March 25, 1961, when he was discharged. During this period of treatment he was also seen by Dr. Manoel A. Falcao on February 2, 1961 for X rays, and on February 7, 1961 by a Dr. Martin in connection with an application for cash sickness benefits.

The petitioner testified that he received six weeks' cash sickness payments in January and February and could have done light work after March 25, 1961, although cold and rainy weather gave him difficulty; that some time after this date he was examined by a Dr. Fay at respondent's request; that he first registered for work with the department of employment security on April 6, 1961; and that on August 25, 1961 he obtained employment with Schmidt Electric Company at an average weekly wage of $62 for a forty-hour week.

The petitioner called no medical witnesses but did attempt to introduce in evidence information filed by respondent with the department of employment security as being probative of the injury he claimed to have received on December 19, 1960 and of an incapacity resulting therefrom. This evidence was excluded by the single commissioner as being privileged under G. L. 1956, §28-42-38. He was, however, permitted to introduce a copy of a decision of the department of employment security board of review dated October 6, 1961 which held that, on the basis of impressive medical evidence, petitioner had been forced to terminate his employment with respondent on December 27, 1960 because of an injury sustained at work.

It would appear therefrom that petitioner's application for unemployment compensation filed with the department of employment security on April 6, 1961 was denied on the ground that he had voluntarily terminated his employment with the instant respondent on December 27, 1960. The petitioner appealed therefrom to the board of review, contending that the decision was erroneous in that he had

been forced to quit work by reason of an injury sustained on December 19, 1960. It was for probative force based on the doctrine of collateral estoppel that the board of review's decision was offered in evidence.

The petitioner then placed in evidence Dr. Malinou's bill in the amount of $125 and that of Dr. Falcao for $35. The respondent's exceptions to the admission of such evidence were duly noted. With the introduction of the medical bills, petitioner rested, although the single commissioner admonished petitioner's counsel that he might be doing his client a disservice by failing to put in evidence any medical testimony.

A decree was thereafter entered by the single commissioner finding:

"1. That the petitioner did sustain some injury, extent unknown, on December 19, 1960 arising out of and in the course of his employment with the respondent, connected therewith and referable thereto of which injury the respondent had knowledge.

"2. That the average weekly wage of the petitioner at the time of said injury was $106.24.

"3. That the petitioner to date has failed to prove any loss of earning capacity or disability as a result of said injury."

And ordered that:

"1. No order can be made at this time relative to the payment of compensation benefits or an award to any doctors for medical services rendered in the absence of any evidence as to just what those services were or whether they were necessary to effect a cure, rehabilitation or relief of the petitioner from the effects of the above described injury.

"2. Since the petitioner failed to prove all of the allegations set forth and contained in his petition, no award of counsel fee or costs can be made in this case."

The petitioner appealed therefrom to the full commission and in his reasons in support thereof he included an evidentiary ruling made by the single commissioner which was

also pressed here. Our review of it, however, convinces us that it is without merit and for that reason it will not be further considered.

The petitioner has assigned six reasons in support of his appeal from the decree of the full commission denying and dismissing the petition. He postures them as raising three questions, only two of which will be considered. The first question arises out of the evidentiary ruling heretofore mentioned as being without merit.

The next question in effect challenges the failure of the single commissioner and of the full commission to give consideration to the decision of the board of review by which petitioner was found to have been incapacitated for work by reason of the injury which gave rise to the instant petition. In this regard, he relies on the doctrine of collateral estoppel and cites *Capaldo* v. *Public Utility Hearing Board*, 77 R. I. 378, and *DiVona* v. *Haverhill Shoe Novelty Co.*, 85 R. I. 122. Neither of these cases, however, is authority for the proposition for which they are cited in the instant cause. The first case related to the effect on the public utility hearing board of a decision made by it in a previous hearing, while in the *DiVona* case the issue related to the extent that the doctrine of res adjudicata applied in workmen's compensation proceedings. Both cases dealt with previous decisions reached by the same tribunal in their respective jurisdictions.

Here, however, petitioner seeks to have the finding by the department of employment security board of review, that the instant petitioner was incapacitated for work by reason of an injury sustained in the course of his employment, binding on the workmen's compensation commission whose jurisdiction is totally unrelated to that of the department of employment security. He argues, however, that under the doctrine on which he relies the determination of one administrative agency possessing quasi-judicial powers is binding on another such agency.

Whether there is merit in this argument, we need not inquire. We have heretofore pointed out that the legislature by creating the workmen's compensation commission intended to cloak it with the judicial functions on compensation matters previously vested in the superior court, conferring on said commission a judicial as distinguished from an administrative function. *Segrella* v. *Workmen's Compensation Comm'n,* 91 R. I. 282; *Cole* v. *New England Transp. Co.,* 88 R. I. 408; *Varin* v. *Lymansville Co.,* 87 R. I. 463; *Brown & Sharpe Mfg. Co.* v. *Lavoie,* 83 R. I. 335. See Rule 24 of the supreme court as amended, P. L. 1962, p. 1763.

We hold therefore that the decisions of an administrative agency are without probative value in hearings before the workmen's compensation commission. See *Small* v. *Haskins,* 26 Vt. 209.

The petitioner's third and final question, namely, is: did the workmen's compensation commission apply the fair preponderance test in passing on the evidence adduced before the single commissioner? If it were petitioner's contention that this court should review the record for the purpose of determining whether the commission overlooked material evidence, such contention would be without merit. Such review would be equivalent to weighing the evidence on which the commission made its findings and those findings are final in the absence of fraud. *Varin* v. *Lymansville Co., supra.*

He, however, also cites the foregoing case and appears to argue that it stands for the proposition that this court will examine the evidence to determine whether the commission performed their duty or neglected so to do by making findings contrary to the evidence before them, as evidenced by their conception of the applicable rule. Prescinding from the pertinence of *Varin* v. *Lymansville Co.* to the question before us, we have heretofore examined the rescript of a trial justice in workmen's compensation

proceedings to determine whether the fair preponderance rule was properly understood and applied by him. See *Emma* v. *A. D. Juilliard & Co.*, 75 R. I. 94, and *Campbell* v. *Walsh-Kaiser Co.*, 72 R. I. 358.

In the instant cause, the single commissioner found that petitioner sustained an injury while lifting the heavy pallets of glass but had failed to prove that the injury had resulted in any incapacity for work. Acknowledging that in *Valente* v. *Bourne Mills*, 77 R. I. 274, this court held that medical testimony, in certain circumstances, was not necessary to prove a causal connection between an injury and incapacity, he felt that the evidence in the instant cause fell short of that in *Valente*.

On review of the single commissioner's decree, the full commission went further and dismissed the petition. They did so, however, because on the record before them they found as stated in their decision that petitioner had failed to prove that the injury which he claimed to have sustained on December 19, 1960 resulted in any loss of earning capacity. It is well established that without proof of such incapacity a claim for an injury arising out of and in the course of one's employment cannot be maintained against the employer. *Rosa* v. *George A. Fuller Co.*, 74 R. I. 215; *Ruggiero* v. *Brown & Sharpe Mfg. Co.*, 71 R. I. 178; *Weber* v. *American Silk Spinning Co.*, 38 R. I. 309. For the full commission therefore to have assumed, as did the single commissioner, that petitioner did sustain some pain or temporary indisposition on December 19, 1960, such a determination would be insufficient to support his petition since no right to compensation would flow therefrom unless, or until, he could show incapacity resulting therefrom. Nor would the right to recover therefor within two years commence to run until incapacity resulted. *Rosa* v. *George A. Fuller Co., supra.*

Indeed the legislature, recognizing that an employee might well sustain an injury without resulting incapacity,

expressly provided for medical care in such cases by vesting jurisdiction for the determination thereof in the director of labor. G. L. 1956, §28-33-9.

The question, therefore, is whether, accepting the petitioner's uncorroborated albeit uncontradicted testimony, there was any evidence from which the commission could reasonably infer that the petitioner's termination of his employment with the respondent was not due to an incapacity for work resulting from his alleged injury of December 19, 1960. We have carefully reviewed the record for the sole purpose of determining whether the commission's finding was unsupported by evidence or a reasonable inference which might be drawn therefrom. See *Jillson* v. *Ross*, 38 R. I. 145. From the sketchy symptoms of the injury the petitioner claimed to have sustained, we cannot say that the full commission erred in failing to draw an inference which would establish a causal connection between the symptoms he described and a loss of earning capacity.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Martin Malinou,* for petitioner.

*Francis V. Reynolds, Bernard W. Boyer,* for respondent.