248 A.2d 593.

## Mario N. Boccarossa *vs.* Nationwide Mutual Insurance Company.

DECEMBER 20, 1968.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This is an employee's appeal from a final decree of the workmen's compensation commission, denying and dismissing his original petition for benefits under the workmen's compensation act.

The petitioner's status as an employee is not disputed, nor does respondent contend that petitioner's incapacity, if any, was not work-connected. What is in issue, on this appeal, is the question of whether petitioner, having executed a general release in favor of a third party whose alleged negligence occasioned petitioner's injury, made an election of remedies which precludes recovery of compensation benefits under the provisions of G. L. 1956, §28-35-58, as amended.[1]

---

[1]This section provides: "Where the injury for which compensation is payable under chapters 29 to 38, inclusive, of this title, was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may take. proceedings, both against that person to recover damages and against any person liable to pay compensation under said chapters for such compensation, but shall not be entitled to receive both damages and compensation; and if the employee has been paid compensation under said chapters, the person by whom the compensation was paid shall be entitled to indemnity from the person so liable to pay damages as aforesaid, and to the extent of such indemnity shall be subrogated to the rights of the employee to recover damages therefor; provided, however, that when money has been recovered either by judgment or by settlement by such employee from the person so liable to pay damages as aforesaid, by suit or settlement, and the employee is required to reimburse the person by whom the compensation was paid, the employee or his attorney shall be entitled to withhold from the amount to be reimbursed that proportion of the costs, witness expenses, and other out-of-pocket expenses and attorney fees which the amount which the employee is required to reimburse the person by whom compensation was paid bears to the amount recovered from the third party."

It appears from the record that on December 23, 1964, petitioner was employed by respondent as a district sales manager, responsible for instructing, supervising and assisting respondent's salesmen in connection with the sale of insurance. On the day in question, petitioner was accompanying one such salesman to an interview with a prospect in Pawtucket. He was sitting in the salesman's car which had stopped for a traffic light when the car was struck in the rear by a motor vehicle being operated by a person not a party to these proceedings.

The petitioner experienced some slight pain shortly after the incident but assumed that it would soon pass and considered the injury to be minor. However, a week or so later he called at the Bristol County Medical Center where x-rays were taken, but hearing no result he assumed them to be negative.

Although not definitively set forth in his testimony, it would appear that about this time, petitioner was in contact with a representative of the alleged tortfeasor's insurance company. In any event, on February 12, 1965, he executed a release of all claims in favor of said tortfeasor and received in consideration therefor a check in the amount of $100. Shortly thereafter, in March or April, pursuant to respondent's plan for all its employees, petitioner underwent an annual medical examination at which time he mentioned the trauma of December 23, 1964, but nothing was made of it. Throughout this period, petitioner continued to work and did so until June 11, 1965. On that day he suddenly experienced sharp pain in his neck and left arm of such severity as to prompt him to call again at the Bristol County Medical Center. There he was referred to the Rhode Island Hospital where he was admitted by Dr. Julius Stoll, Jr.

The petitioner remained at the hospital until the following June 29. During his hospitalization, a myelogram dis-

closed a left C6-7 disk defect which Dr. Stoll attributed to the injury of December 23, 1964. A left C7 laminectomy was performed and petitioner did not return to work until August 18, 1965, and then but for short periods. It was not until October that he was able to work full time.

It would appear from petitioner's decidedly vague testimony that after his hospitalization he conferred with respondent's carrier regarding possible compensation benefits. It likewise appears that liability therefor was disavowed, again apparently, for the reason that petitioner had made a settlement with the alleged tortfeasor's insurer. Further, it would also appear that petitioner offered to return the $100 consideration, looking to cancellation of the release as being invalid by reason of mutual mistake of fact. In any event, petitioner testified that said insurer eventually refused to cancel the release.

The petition bears two file marks, namely: November 24, 1965 and October 5, 1966. However, there is an attempted obliteration of the first file mark and the commission's official records state that the petition was filed October 5, 1966. Adding to the confusion, the petition was apparently signed by petitioner in November 1965.

It would appear that during the eleven month period from November 1965 to October 1966, discussions between petitioner and the two insurance carriers were in progress.

At the hearing before the single commissioner, it was brought on the record that petitioner had commenced a civil action against the operator of the motor vehicle involved in the December 23, 1964, rear end collision, and that this action was pending when hearing on the instant petition commenced. None of the records relating to the civil action appears in the instant record, but respondent acknowledged to the single commissioner that such action was pending, and in its brief informed this court that action was commenced in the superior court on October 10, 1966.

The respondent further informs us that on March 15, 1968, an order was entered in the superior court by the terms of which the validity of the release would be litigated. It was petitioner's contention before the single commissioner that this issue could be resolved in the compensation proceedings. The single commissioner correctly ruled that the commission's jurisdiction was limited to that which the compensation act conferred and that nowhere in the statute was such jurisdiction either expressed or implied. See *Landry* v. *Cornell Const. Co.*, 87 R. I. 4, 137 A.2d 412.

So ruling, he caused to be entered a decree denying and dismissing the petition on the jurisdictional ground that in executing a release and accepting $100 in consideration thereof, petitioner had made an election under §28-35-58, as amended, *supra,* and was precluded from collecting benefits under the workmen's compensation act, citing *Travis* v. *Rialto Furniture Co.*, 101 R. I. 45, 220 A.2d 179. By reaching this result, the single commissioner found it unnecessary to reach a second defense raised by respondent, namely, that petitioner failed to establish any loss of earning capacity. See *Denisewich* v. *Abbott Glass Co.*, 98 R. I. 182, 200 A.2d 455.

From that decree, petitioner seasonably appealed to the full commission. He assigned numerous reasons therefor which, when analyzed, present but two questions. They are: did the single commissioner err in holding that he was without jurisdiction to inquire into the validity of the release; and, in substance, that if the commission was without jurisdiction to pass on the validity of a release given in a purported settlement of all claims against a third party tortfeasor, was it nevertheless error for the single commissioner to have denied and dismissed the petition? This latter reason rested on the proposition that, under the circumstance of pending litigation in the superior court, proceed-

ings on the petition for compensation benefits should be held in abeyance until the question pending in the superior court was finally adjudicated.

The full commission rejected petitioner's contentions and, on their independent examination of the record, sustained the single commissioner. From the final decree of the full commission entered according to their decision, petitioner seasonably appealed to this court.

In connection therewith, he has assigned as reasons, those on which his appeal to the full commission rested. We shall consider them as raising the two issues which his reasons raised and were considered by the full commission.

We have no hesitancy about disposing the first issue adversely to petitioner. For the purposes of the workmen's compensation commission, the release of all claims against the third party tortfeasor constituted a settlement in full for the injury out of which his alleged incapacity for earnings arose and, so considered, amounted to an election under §28-35-58, as amended. This is so because an employer or its carrier responsible for compensation benefits is entitled to be subrogated against the third party to the extent of compensation benefits awarded. *Mingo* v. *Rhode Island Co.*, 41 R. I. 423, 103 A. 965.

Thus, if an injured employee makes a settlement with a third party by reason of whose negligence, incapacity resulted and executes a release in favor of the negligent third party, such release would act as a bar to further recovery and such bar would operate to preclude the employer from indemnification. Whether such release were valid or invalid could, therefore, be litigated only in a civil action brought by the employee against the third party. Should such litigation result in a determination of the validity of the release, employee would have been fully compensated and the settlement he made constitute an election precluding recovery of compensation benefits.

Were such litigation to result in a determination that the release did not operate as a bar to recovery against the third party tortfeasor, employee would be at liberty to prosecute both the civil action and an original petition for compensation benefits, provided that such petition was not barred by the statute of limitations, §28-35-57, and provided further that he establishes in the civil action that he has agreed with his employer to reimburse the latter for compensation benefits received, or that the employer has refused to enter into any such agreement. See *Colarusso* v. *Mills*, 99 R. I. 409, 208 A.2d 381, for an in depth discussion.

The second issue raised by petitioner's reasons of appeal is more troublesome. In reaching their respective decisions, denying and dismissing employee's original petition, both the single commissioner and the full commission relied on *Travis, supra.*

There, petitioner made a settlement with a third party tortfeasor whose negligence was responsible for the injuries giving rise to incapacity. Thereafter, he brought an employee's original petition for compensation benefits. This court held that such settlement constituted an election within the meaning of §28-35-58, as amended, saying, "* * * where the injured party in the circumstances here moves against the negligent third party and obtains damages by way of settlement, absent a showing of fraud, he is presumed to have been fully compensated for his injury and made whole by the recovery of such damages." 101 R. I. at 49, 220 A.2d at 181.

In *Travis*, however, it was not brought on the record before the single commissioner, as is the case here, that petitioner was contemporaneously prosecuting a civil action against the third party tortfeasor, in which action the validity of the settlement was in issue. Here, it may be that successful prosecution of petitioner's civil action will be

ultimately aborted by reason of a judicial determination that there is no legal basis for setting aside the release. Until such a determination is made, however, we are of the opinion that the full commission should retain jurisdiction of the instant petition.

Justice will be best served by vacating the decree of the full commission; and remanding the cause to that body to be held in abeyance pending final adjudication in the civil action of the validity of the release.

Should such question be resolved favorably to petitioner, the full commission will then, on the record before them, pass on the petition as it relates to those rights ordinarily adjudicated on an employee's original petition. Moreover, such consideration by the full commission should include a determination of the other jurisdictional question raised by the respondent at the hearing before the single commissioner and not reached by him: namely, did the petitioner in fact sustain a loss of earning capacity?

It is our judgment, then, for the purpose of achieving the result herein set forth, that the appeal is sustained and the cause is remanded to the workmen's compensation commission for further proceedings not inconsistent with this opinion.

*John G. Carroll,* for petitioner.

*Francis V. Reynolds, Bernard W. Boyer,* of counsel, for respondent.

248 A.2d 597.

LEO GARTSU *et al. vs.* ZONING BOARD OF REVIEW OF THE
CITY OF WOONSOCKET.

DECEMBER 20, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This petition for certiorari seeks to quash a decision of the respondent board granting an application filed by a cafe to erect an addition to its building. The restaurant and bar operated by the applicant is a nonconforming use located on Mendon Road in an area zoned for residential purposes.

While sec. 4.71 of the Woonsocket zoning ordinance contains an express prohibition against the expansion of a nonconforming use, this court has ruled that relief from this provision is available by way of an application for a variance as provided by G. L. 1956, §45-24-19 (c). *Tuite* v. *Zoning Board of Review,* 95 R. I. 12, 182 A.2d 311. The right to a variance, as we have declared innumerable times, depends upon a showing of unnecessary hardship, that phrase being construed to mean that a literal enforcement

of sec. 4.71 has deprived the cafe of all beneficial use of its property. The existence of competent evidence probative of this condition is a condition precedent to a zoning board's grant of a variance. *Coupe* v. *Zoning Board of Review,* 104 R. I. 58, 241 A.2d 821.

In seeking to sustain its burden in this regard, the cafe's president told the board that he was familiar with his organization's financial records and that the proposed addition was needed to permit the applicant "to economically continue" its operation. No financial statements or data were produced to show the fiscal condition of the cafe.

In our opinion, the words "economically continue" lack any probative force whatsoever in establishing that, because of the provisions of the zoning ordinance, the cafe was being deprived of all beneficial use of its property. The economical continuation of the cafe's business described by its president might have referred to a business operation which is being run in a thrifty, efficient manner or to some endeavor which realizes some profit or possibly to an enterprise which is wallowing in the sea of insolvency. Whatever may be the true financial picture of the applicant, on the record before us, remains a complete mystery. This witness's testimony amounts to a vague, nebulous and inconclusive statement which is of no assistance to the cafe in establishing the requisite hardship which would entitle it to relief. In short, there is a complete absence of any competent evidence to show that the legislative restriction against the extension of a nonconforming use has made the operation of the Mendon Road cafe economically prohibitive. Although the board in its decision declared that it was granting the instant application because the cafe's small floor space made it difficult for the applicant to service large dinner parties, we would point out that the award of a variance was never intended to afford relief from a mere personal inconvenience experienced by a property

owner or as a guise to guarantee such an individual a more profitable use of his property. The record is barren of any evidence which could support the grant of the variance given here.

The petition for certiorari is granted and the decision of the board is quashed.

*Fred Israel,* for petitioners.

*M. Durkan Cannon,* Assistant City Solicitor, for respondent.