313 A.2d 135.

MARIO N. BOCCAROSSA *vs.* CHARLOTTE WATKINS.

DECEMBER 28. 1973.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This negligence action marks the second time that Mario N. Boccarossa (Boccarossa) has appeared before us seeking relief from an adverse action taken in a subordinate tribunal. The litigation in which he has been enmeshed since 1966 arose out of a collision which occurred on December 23, 1964. At that time Boccarossa was a district sales manager for Nationwide Insurance Company. On the day in question he was accompanying a salesman who was proceeding to Pawtucket to interview a prospect. The salesman had stopped his automobile for a traffic light when it was struck in the rear by another vehicle owned and operated by the defendant Charlotte Watkins (Watkins). On February 12, 1965, Boccarossa executed a release of all claims in favor of Watkins and received in consideration therefor a check in the amount of $100. Four months later, he experienced a sharp pain in his neck and left arm that was of such strength that he was hospitalized. A myelogram disclosed a disc defect, and a laminectomy was performed. Boccarossa did not

return to his job until August 18, 1965, and worked only part-time until October when he was able to resume his business activities on a full-time basis.

Boccarossa launched a two-pronged attempt to seek redress for his injuries. He sought workmen's compensation benefits from Nationwide and he started this negligence action in the Superior Court against Watkins. In her answer, Watkins pleaded the execution of the release as a bar to any recovery of damages from her.

In *Boccarossa* v. *Nationwide Mutual Ins. Co.*, 104 R. I. 711, 248 A.2d 593 (1968), Boccarossa appealed the Workmen's Compensation Commission's denial and dismissal of his petition on the ground that in executing the release and accepting the $100, Boccarossa had made an election to seek damages from the alleged tortfeasor rather than compensation from his employer and was barred by the provisions of G. L. 1956 (1968 Reenactment) §28-35-58 from seeking compensation from Nationwide. We held that since Boccarossa had filed this negligence action wherein the validity of the release could be litigated, justice would be best served by vacating the commission's decree and having the workmen's compensation proceeding held in abeyance until the issue of the validity of the release had been finally litigated. That issue is before us now.

The single question tried before a Superior Court justice sitting with a jury was whether or not Boccarossa could have the release set aside.

At the conclusion of all the testimony, Watkins made a motion for a directed verdict. The trial justice reserved decision on the motion pursuant to Super. R. Civ. P. 50. The jury returned a verdict setting aside the release. The trial justice then granted the direction. Watkins filed a conditional motion for a new trial. The motion was denied. Boccarossa appeals the grant of the directed verdict. Wat-

kins has filed a cross appeal from the denial of the conditional motion for a new trial.

In granting the directed verdict the trial justice relied on a long line of cases which held that a release given in a personal injury or other type of mishap will not be set aside unless there is an affirmative showing that the release was obtained by fraud, misrepresentation or an over-reaching on the part of one of the parties. *Green* v. *Tingle,* 92 R. I. 393, 169 A.2d 373 (1961); *Leary* v. *Leary,* 91 R. I. 175, 161 A.2d 812 (1960); *LaBelle* v. *DiStefano,* 85 R. I. 359, 131 A.2d 814 (1957); *Meglio* v. *Renzi,* 84 R. I. 508, 125 A.2d 186 (1956); *Smith* v. *Rhode Island Co.,* 39 R. I. 146, 98 A. 1 (1916); *Vaughan* v. *I. B. Mason & Sons,* 23 R. I. 348, 50 A. 390 (1901). These cases stand for the proposition that an untainted release is an absolute bar to the maintenance of an action based upon the incident from which the release resulted.

Mindful as he was of the principles just expressed, the trial justice charged the jury that they could vitiate the release if they found its execution was the result of a mutual mistake as to the nature and extent of Boccarossa's injuries. The trial justice in charging on one proposition of law and granting the direction on another proposition of law was employing a practice that was recognized by us as having little if any enthusiastic support. *Ferro* v. *Ferrante,* 103 R. I. 680, 240 A.2d 722 (1968). The trial justice knowingly invoked this procedure because of what appeared to him to be an inconsistency between the holdings of this court which limit the grounds of voiding a release to fraud, misrepresentation or overreaching, and the holding in *Marini* v. *Mutual Benefit Health & Accident Ass'n,* 69 R. I. 338, 33 A.2d 193 (1943), which voided a

release under the doctrine of mutual mistake.[1] As will be seen, this is no inconsistency.

The record provides us with the following pertinent facts. Boccarossa testified that after the impact, he felt a "slight twinge." After the operators had exchanged the necessary information, all parties proceeded on their respective ways. Boccarossa continued to work. Two weeks later, after feeling some discomfort, he sought medical attention. X-rays were taken. He was not informed as to what they revealed. His medical bills were between $35 and $45. The release was executed about a month and a half later on February 12, 1965. It was a release on a form used by Nationwide and it released Watkins from all liability for any injuries known or unknown resulting from the collision. The release had been supplied by Nationwide's district claims manager, who had discussed the matter with Boccarossa and Watkins' adjuster. The facts clearly established a complete absence of any fraud, misrepresentation or overreaching.

We turn now to the *Marini* case. There, it is clear that both parties to the release relied upon a physical examination administered to the plaintiff by a physician. The doctor's diagnosis was a sprained back with contusions. Both parties testified that their release based upon what was a misdiagnosis was the primary factor leading to the settlement of the matter by the execution of the release. Here, there is no mutual reliance on medical advice. Boccarossa underwent no physical examination prior to his signing the release. All representations as to his physical

---

[1] The General Assembly has afforded some protection to a person who may have imprudently executed a release of his personal injury claim against an alleged tortfeasor. General Laws 1956 (1969 Reenactment) §9-19-12.1, provides that any such release which is negotiated within 30 days of the tortious act can be voided at the option of the releasor upon his return of the consideration. The statute was of no help to Boccarossa because his release came more than a month after the collision.

condition emanated from his own opinion. He considered his ailment to be minor in nature. There was no mistake on the part of Watkins, or more accurately, her insurer. The insurer was attempting to achieve an amicable, expeditious settlement without having to bear the rigors of a law suit.

The sentiments expressed in *Beaver* v. *Harris' Estate*, 67 Wash. 2d 621, 409 P.2d 143 (1965), bear repeating here. The situation in *Beaver* parallels that found in the case at bar. There, the plaintiff suffered injuries in an automobile collision. The principal injury received was thought to be a sprained back. The release presented to the injured party was almost a carbon copy of that which Boccarossa executed. It was signed on June 14, 1962. A physical examination two months later disclosed a ruptured disc. Hospitalization and suit followed in that order. The release was pleaded as a bar. The plaintiff argued mutual mistake of a material fact, *i.e.*, the nature of the injury, and asked that the release be set aside.

In dealing with the theory of mutual mistake and its applicability, we find the following perceptive comments:

> "What constitutes a mutual mistake must be clearly established.
>
> "There is ample authority holding a mutual mistake must be one involving both parties, a mistake independently made by each party.
>
> "In the case now being considered, the only information of plaintiff's condition was from the plaintiff himself. Defendant had no independent knowledge and he accepted plaintiff's own diagnosis and opinion of his injuries. If there was a mistake, it was a unilateral mistake, rather than a mutual mistake. (citations omitted)" *Id.* at 628, 409 P.2d at 148.

We regard the considerations pointed out by the Washington court as being equally applicable to the resolution of the issue between the parties before us. In negotiating

and settling cases, many matters must be taken into consideration. There is in all settlements an element of risk and chance. It is common knowledge that few diagnoses and prognoses concerning injuries to the human body can be given with absolute certainty or accuracy. Here, plaintiff knew at the time he settled his claim and signed the release that he was making a final and complete settlement.

Any mistake involved in the considerations culminating in the decision to sign the release was clearly unilateral. We must remember that a release is essentially a type of contract, and that a unilateral mistake in the formation of a contract affords the errant no relief. *Southbridge Roofing Co.* v. *Providence Cornice Co.*, 39 R. I. 35, 97 A. 210 (1916); 2 Restatement, *Contracts* §503 (1932).

In *Wheeler* v. *White Rock Bottling Co.*, 229 Ore. 360 at 367, 366 P.2d 527 at 530 (1961), it was noted that:

> "* * * there are attractive policy reasons for adopting a rule that would permit perfectly honorable releases to be repudiated in the event of aggravation of an injury or the discovery of undiagnosed injuries. There are less compassionate but equally sound policy reasons for requiring persons of legal age and capacity to contract to stand by their covenants, including bargains containing an element of chance."

If releases obtained under the facts and circumstances now before us are to be taken lightly and rescinded, there will be few settlements without litigation. Settlements serve a valuable function in that the congestion on our court dockets and calendars can be substantially relieved by the disposition of controversies before they come into our court system or go to trial. It would be unfortunate if many people with relatively small claims were forced to the unnecessary expense and delay of litigation. There would be an appreciable increase in the number of per-

558

sonal injury cases presented to the court for final determination. No one settling a case would be secure from litigation until the statute of limitations on the action had tolled. Finality has its virtue.

While we are aware of authorities and trends[2] in other jurisdictions toward treating releases as binding only when they do not result in hardship or in unconscionable results, we believe our own decisions and selection of competing policy considerations require us to reject mere improvidence as a plausible ground for setting aside otherwise unimpeachable contracts.

The granting of the directed verdict was proper, and the plaintiff's appeal therefrom is denied and dismissed. The defendant's cross appeal is denied pro forma.

*John G. Carroll, Edward E. Dillon, Jr.,* for plaintiff.

*Higgins & Slattery, William C. Dorgan,* for defendant.

---

[2] 3 Corbin, *Contracts* §598 at 587 (1960); 9 Wigmore, *Evidence* §2416 at 55 (1940); *Goodman* v. *Missouri Pacific R. R.,* 312 S.W.2d 42 (Mo. 1958); *Couillard* v. *Charles T. Miller Hospital, Inc.,* 253 Minn. 418, 92 N.W.2d 96 (1958); *Ruggles* v. *Selby,* 25 Ill.App.2d 1. 165 N.E.2d 733 (1960); *Ranta* v. *Rake,* 91 Idaho 376, 421 P.2d 747 (1966).