**CHAMPLIN PETROLEUM COMPANY et al., Appellants,**

v.

**Travis W. PRUITT, Appellee.**

No. 17746.

Court of Civil Appeals of Texas, Fort Worth.

July 1, 1976.

Rehearing Denied Aug. 6, 1976.

Cantey, Hanger, Gooch, Cravens & Munn, and Richard L. Griffith, Fort Worth, for appellants.

King & Massey, Inc., and Marion L. Massey, Fort Worth, for appellee.

OPINION

BREWSTER, Justice.

This is an appeal by defendants, Champlin Petroleum Company, Robert L. Buttrill, and Employers Casualty Company from a declaratory judgment declaring an instrument dated December 28, 1970, signed by Travis W. Pruitt and Johnson Linen Service and styled "Release in Full of All Claims" to be inoperative and of no force and effect as to the rights of the plaintiff, Travis W. Pruitt, and that it would in no way prevent a recovery by plaintiff from the defendants, Employers Casualty Company, Champlin Petroleum Company and Robert Buttrill.

The plaintiff, Pruitt, had started the action by suing the above named defendants and also Natatorium Laundry d/b/a Johnson Linen Service, and Liberty Mutual Insurance Company. Pruitt alleged in part the following: "On or about November 19, 1970, Travis Pruitt, Plaintiff, was driving a delivery truck for his employer, Johnson Linen Service (a dba of Natatorium Laundry Company). Mr. Pruitt was involved in a collision with an automobile owned by Champlin Petroleum Company and driven by R. L. Buttrill who was then in the course and scope of his employment with Champlin Petroleum Company. Employers' Casualty Company carries the automobile liability policy on the automobile owned by Champlin Petroleum Company and operated by R. L. Buttrill. Liberty Mutual Insurance Company is the workmen's compensation insurance carrier for Johnson Linen Service."

Pruitt alleged that he sustained serious bodily injury in the wreck and further alleged that "His rights to recover workmen's compensation benefits and/or his rights to recover against R. L. Buttrill and/or Champlin Petroleum Company hinge on the

validity of invalidity of the purported release dated December 28, 1970 . . . . The liability of Champlin Petroleum Company and/or its employee, R. L. Buttrill, and/or Employers' Casualty Company, the automobile liability insurance carrier for Champlin Petroleum Company, hinge upon the validity or invalidity of said release. The liability of the workmen's compensation insurance carrier, Liberty Mutual Insurance Company's right to recover under its right of subrogation against Employers' Casualty Company, depends upon the validity or invalidity of said release."

In the action plaintiff first sought judgment setting the release aside and decreeing that it was invalid and ineffective to bar him from suing the other defendants named therein. If he was successful he then sought in that case a recovery of damages in tort against Champlin Petroleum Company and Buttrill arising from injuries he received in the wreck and/or workmen's compensation benefits from defendant, Liberty Mutual Insurance Company. Plaintiff further alleged that if the release was valid he had a fraud action for damages against his former employer, the defendant Johnson Linen Service.

In view of the fact that the rights of the parties hinged on the outcome of the declaratory judgment action relating to the validity of the release the trial court ordered a separate trial of plaintiff's case seeking to rescind the release that he had executed in favor of Buttrill, Champlin Petroleum Company and Employers Casualty Company. Pursuant to that order that part of the case went to trial before a jury and the trial resulted in a hung jury. When the hung jury occurred both plaintiff and defendants moved for judgment. The motion for judgment filed by Pruitt was granted, and the motion for judgment filed by appellants was overruled. This resulted in the court rendering the judgment declaring the release to be inoperative and to have no force and effect on the rights of the plaintiff, Pruitt. The three appellants have appealed from that decree. This part of the action was severed from the rest of the case.

The appellants in their brief make the following statement: "The length . . . of appellants' brief belies the basic simplicity of the primary issue before the Court, to wit: the existence of an adequate consideration to support the release . . . ."

The appellee states the question involved on this appeal this way in his brief: ". . both parties seem to be in agreement that the only issue to be resolved is a question of law, to-wit: Is the contract (release) supported by valid consideration and therefore binding upon Travis W. Pruitt, Appellee?"

The trial court had it analyzed the same way because the only two issues he submitted to the jury purported to inquire as to whether there was a consideration for Pruitt executing the release.

The judgment appealed from does not state the ground of Pruitt's motion for judgment on which his motion for judgment was granted and upon which the judgment being appealed from was based.

In appellee's petition he had alleged that the release was invalid on the following grounds: (1) Pruitt had signed the release and draft through a mistake; (2) he had received no consideration for signing the release and/or draft; (3) there was a failure of consideration for his signing the release and/or draft; and (4) there was no delivery of the release to Employers Casualty Company with the intention that it become an operative contract against Pruitt.

The appellants' second point of error is that the trial court erred in rendering judgment for Pruitt because the release executed by him on December 28, 1970, in favor of defendants was, as a matter of law, supported by a valid consideration and is a bar to the cause of action asserted against the defendants by Pruitt.

We sustain this point of error and reverse and render the judgment.

The following facts were undisputed: Travis Pruitt was an employee of Natatorium Laundry, d/b/a Johnson Linen Service; he was a route man, driving one of his employer's trucks to cover his route; while engaged in his employer's business his em-

ployer's truck that he was driving was in collision with an automobile belonging to Champlin Petroleum Company that was being driven by R. L. Buttrill, an employee of Champlin's; the wreck occurred on November 19, 1970, in Fort Worth; Employers Casualty Company carried the liability insurance on the automobile belonging to Champlin Petroleum Company; the truck was damaged in the wreck and Travis Pruitt's left leg was injured; Pruitt's leg hurt after the wreck and at his boss' insistence he went, after the wreck, to the Coffey Clinic where his leg was x-rayed; the nurse at the Clinic told him to return the next day, but he did not return then because his boss indicated that they could not spare him; at first he thought that his injuries were minor and Pruitt testified that it was not until three or four weeks after the wreck that he realized he had more than a minor injury; Pruitt continued to work after the wreck past the time that he endorsed the two drafts involved on January 15, 1971; following the wreck Employers Casualty Company's employees viewed the laundry truck and had an estimate made on the damages it sustained in the wreck; those damages were estimated at $1,849.76; one of their adjustors negotiated a settlement of the claim with the president of Johnson Linen Service; a release was prepared and mailed to Johnson Linen Service; Employers Casualty Company advised that Johnson Linen Service and Travis Pruitt should both execute the release and return it to Employers Casualty Company, which Company would then send drafts to pay for the release; the release was dated December 28, 1970; it read as follows:

"RELEASE IN FULL OF ALL CLAIMS

"FOR AND IN CONSIDERATION of the payment to JOHNSON LINEN SERVICE and TRAVIS PRUITT of the sum of— ONE THOUSAND EIGHT HUNDRED FORTY–NINE AND 76/100 _ _ _ Dollars ($1,849.76), the receipt of which is hereby acknowledged, I/we, being over 21 years of age, do hereby release, acquit and forever discharge CHAMPLIN PETROLEUM COMPANY and ROBERT L. BUTTRILL and any other persons, firms or corporations of and from any and all actions, causes of action, claims, demands, damages, costs, loss of service, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or to result from an accident that occurred on or about the 19th day of November, 1970, at or near Lipscomb and W. Daggett, Ft. Worth, Texas.

"I/we do hereby declare and represent that the injuries sustained are permanent and progressive and that recovery therefrom is uncertain and indefinite, and in making this release it is understood and agreed that I/we rely wholly upon my/our own judgment, belief and knowledge of the nature, extent and duration of said injuries as well as the liability questions involved, and that I/we have not been influenced to any extent whatsoever in making this release by any representations or statements regarding said injuries, or liability, or any other matters, made by the persons, firms or corporations hereby released, or by any person(s) representing, or acting for him or them, or by any physician or surgeon by him or them employed.

"It is further understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment of said sum is not to be construed as an admission of liability on the part of Champlin Petroleum Company and Robert L. Buttrill by whom liability is expressly denied.

"This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital.

I/we further state that I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our own free act.

"WITNESS our hand and seal this the 28th day of December, 1970. "In presence of:

**360**

"WITNESSES TO SIGNATURES                CAUTION!
"Read before signing.

(signed) "1.   <u>Jack Henckels, Pres.   (Seal)</u>
                    Johnson Linen Service

 ⁰          "2.   <u>/s/  Travis W. Pruitt  (Seal)</u>
                    Travis Pruitt"

---

The following additional facts were also undisputed:

Employers Casualty Company's employees had been advised that Pruitt was not hurt in the wreck; Travis Pruitt's name was put in the release by Employers Casualty Company because in settling cases it was the custom and practice of Employers Casualty Company to include in the release the names of both the driver and owner of the vehicle involved and this was done in order to get a full release from all possible claimants in order to protect their insureds; no one connected with Employers Casualty Company had any contact at all with Travis Pruitt in connection with the release and they made no statements to him at all; when the release was received at Johnson Linen Service it was turned over to J. A. Shockler, one of Pruitt's immediate bosses, and he was told by his superior to get Pruitt to sign it; Shockler handed the release to Pruitt, who testified that he was told that the papers had to do with getting his truck back from the shop; he signed the release and gave it back to Shockler; he did not read it before signing it although he can read and he signed it voluntarily without any duress; he did not realize that by signing it he would give up any of his rights; he did not ask Shockler to read the release to him; on the release in print big enough for him to read without his glasses were the words, "Read before signing"; Pruitt did not expect to get anything for signing the release; Shockler took the signed release to Johnson Linen Service's office and gave it to Richard McConn, the bookkeeper, who then mailed the executed release back to Employers Casualty Company; on receiving this release executed by both Pruitt and Johnson Linen Service, Employers Casualty then mailed two drafts drawn on it to the office of Johnson Linen Service; the drafts were mailed there because they knew that Pruitt worked there and they did not have his home address; both of the drafts were dated January 15, 1971; one of the drafts was for $1,849.76, payable to Johnson Linen Service and Travis Pruitt; the other draft was also executed by Employers Casualty Company and was payable to Travis Pruitt and The Coffey Clinic for $40.00; both of these drafts were mailed to Johnson Linen Service and were presented by its employee to Travis Pruitt for his signature; he endorsed both drafts and gave them to his employer; Pruitt did not personally receive any of the money represented by the drafts which were endorsed and cashed; the larger draft was for the exact amount of the estimated repair bill on the truck, and the $40.00 draft was for the medical service rendered Pruitt on the date of the wreck by Coffey Clinic; Pruitt knew that he was a payee in both drafts; and Pruitt testified that even if he had read the release he would probably have signed it for his employer's benefit.

Pruitt's position on this appeal is that he did not receive any money or other benefit out of the transactions when he executed the release and endorsed the two drafts and that there was therefore no consideration for him signing any of the three agreements. The trial court was also apparently of the opinion that in order for a consideration to have been present it was necessary for Pruitt to have actually received some money or other benefit out of the transaction. We say this because the two special issues submitted in its charge to the jury by that court were: (1) "Do you find from a preponderance of the evidence that no right, interest, profit, or benefit was received by Travis W. Pruitt because of his

execution of the release . . ." and (2) "Do you find from a preponderance of the evidence that such right, interest, profit or benefit, as inquired about in Special Issue No. 1, was received by Travis W. Pruitt under the terms of the release instrument?" The second issue was submitted conditionally on a "He did so receive" answer to Issue No. 1. And apparently the court's reasoning in sustaining appellee's motion for judgment, in overruling appellant's motion for judgment, and in rendering the judgment appealed from was that the release agreement evidenced by the release and the two drafts were not supported by a consideration because appellee did not end up with any part of the sums paid by Employers Casualty Company for the signing of the release.

We disagree with the appellee's contention.

■ We hold that the undisputed evidence in this case shows that the release agreement evidenced by the release and by the two drafts were supported by a consideration.

On the strength of the release being executed by both Travis W. Pruitt and Johnson Linen Service, Employers Casualty Company parted with $1,849.76. The agreement was that it would pay out that sum to the two persons executing the release in exchange for their release of the causes of action therein specified. Pursuant to its agreement Employers Casualty Company did pay to those two parties its $1,849.76. It thus sustained a detriment. It was therefore not even necessary that Pruitt receive a benefit out of the transaction in order for there to have been a consideration for the agreement.

■ The law controlling the determination of this consideration question before us is stated in *Lassiter v. Boxwell Brothers, Inc.,* 362 S.W.2d 884 (Tex.Civ.App., Amarillo, 1962, no writ hist.) as follows: "A valuable and sufficient consideration for a contract may consist of either a benefit to the promisor *or a loss or detriment to the promisee.* In other words, sufficient considera-

tion for the agreement may consist of some right, interest, profit, or benefit that accrues to one party, or, alternatively, of some forbearance, loss, or responsibility that is undertaken or incurred by the other party. *Accordingly, it is not necessary that the promisor receive a benefit under the agreement.* On the contrary, if the promisee parts with some legal right or sustains some legal injury as the inducement for the agreement, this will be sufficient." (Emphasis added.)

A case holding to the same effect is *Jones v. Alvin State Bank,* 332 S.W.2d 124 (Tex. Civ.App., Eastland, 1960, no writ hist.). For other cases on this point see 13 Tex. Jur.2d 178, Contracts, § 46.

We hold that by endorsing the two drafts, under the undisputed facts of this case, Pruitt released any cause of action he had against Champlin Petroleum Company, R. L. Buttrill and Employers Casualty Company.

On the back of both of the drafts was the following: "By endorsement hereon payee acknowledges and agrees to the amounts, purposes and terms stated on the face hereof." The payees endorsed the drafts immediately beneath such writing. On the front of the large draft was the following: "Being for: Release in full of all claims against Champlin Petroleum Company and Robert L. Buttrill arising out of loss occurring on or about November 19, 1970, at or near Lipscomb and W. Daggett, Ft. Worth, Texas". On the front of the $40.00 draft was written: "Being for: Medical services rendered Travis Pruitt for accident of 11–19–70 at or near Fort Worth, Texas."

The case of *Berry v. Guyer,* 482 S.W.2d 719 (Tex.Civ.App., Houston, 14th Dist., 1972, writ ref., n. r. e.) is similar to the one here on appeal. The only releases there involved appeared on the back of the drafts. The wording on the back of the draft involved in that case was similar to that appearing on the back of both drafts in this case. In the *Berry* case, Berry was driving a car belonging to his fiance at the time of the wreck. Berry was told by his fiance that he would be required to sign the draft

issued by the insurance carrier of the other party to the wreck. The draft was payable to Berry and his fiance for the exact amount of the car damage. Berry testified, as did Pruitt here, that he did not understand that the effect of signing the draft would be to release any claim he had against the insurance carrier of the other party to the wreck. When Berry later sued the other party to the wreck for damages the trial court granted summary judgment against him decreeing that he had released his cause of action against the defendant when he endorsed the draft. The court in that case at page 720 of the opinion said:

"We cannot escape the simple, unambiguous and direct terms of the release above quoted. The draft was made payable to the order of Josie Miller and John H. Berry, and both, by their endorsements, signed the release which in its very words released the insurer and the insured (appellee) from 'personal injuries and damage to property' resulting from the accident. Mrs. Miller requested that appellant sign the draft and release, and Berry having damaged Mrs. Miller's vehicle, it was to his legal interest to do so. Appellant merely claims by his affidavit that he did not understand that his signing of the draft would in any was release the insurance company in the payment of his claim for personal injuries. We see no possibility of mutual mistake under these circumstances.

"While an injustice may have occurred here, we believe that appellant has lawfully released his claims for personal injuries for which he sued. The trial court did not err in granting summary judgment in favor of appellee. See *Fidelity-Southern Fire Insurance Co. v. Whitman*, 422 S.W.2d 552, 557, 558 (Tex.Civ.App.—Houston (14th Dist.) 1967, writ ref'd n. r. e.). Affirmed."

■ Pruitt had alleged that the release had been executed by him as the result of a mutual mistake and was not binding on him for that reason. We hold that the undisputed evidence in the case shows that Pruitt did not sign the release and drafts as a result of a mutual mistake. See *Berry v. Guyer*, supra.

■ A mistake by only one party to an agreement, where the mistake is not induced by the acts of the other party, is not grounds for setting the agreement aside. *Southern National Bank of Houston v. Crateo, Inc.*, 458 F.2d 688 (5th Cir. 1972).

Pruitt also alleged in his petition that the release agreement was not binding on him because the consideration for such agreement had failed. We overrule that contention because the undisputed evidence showed that the consideration had not failed. Employers Casualty Company had suffered a detriment in giving up the $1,849.76 and $40.00 evidenced by the drafts. That defendant is still out those sums of money by virtue of the release or settlement agreement. The detriment it suffered still exists.

Pruitt's remaining contention as to why he says the release or settlement agreement is not binding on him is because as a matter of law under the evidence in the case he says there was no delivery of the release or settlement agreement.

We overrule that contention.

Pruitt, on this point, relies on the case of *Garcia v. Villarreal*, 478 S.W.2d 830 (Tex. Civ.App., Corpus Christi, 1971, no writ hist.), wherein the court at page 832 held in speaking of a release: "Before the written contract becomes binding on the parties thereto, it must be executed and delivered with the intention that it shall become binding. . . .

". . . The delivery of an instrument means parting with the possession or custody thereof with the evidenced intention that it becomes operative." At the time the release in that case was turned over to the insurance company its representatives were told that one of the persons signing the release was making a claim for personal injuries that she received in the wreck. The draft was made out for the exact amount of the car damage. The plaintiff would not sign that draft. That court held that there was no proof of delivery of the release in that case. Since the signed release got into the hands of the insurance

company with the stated intention that it was not to be effective against the plaintiff, there was no delivery thereof.

 That case is not analogous to the one before us. Here Pruitt signed the release so that his employer could pay for the damage done to his truck in the wreck. He handed the signed release to his employer's bookkeeper, McConn, who then got the president of Johnson Linen Service to sign it. McConn then mailed the executed release back to Employers Casualty Company, who, according to its agreement, then sent out the drafts to Pruitt and his employer. Pruitt was named in each draft as a joint payee.

We hold that the evidence in this case showed as a matter of law that Pruitt and his employer delivered the release to Employers Casualty Company with the intention that it become immediately operative. *Taylor v. Sanford*, 108 Tex. 340, 193 S.W. 661 (1917).

Appellant's brief is lengthy. The parts of the case that we have hereinabove discussed dispose of the appeal. We are in agreement with appellant that the evidence in the case establishes as a matter of law that there was a consideration for the execution of the release; that the consideration therefor did not fail; that the release was not executed by Pruitt as a result of a mutual mistake; and that there was a delivery of the release by Pruitt to Employers Casualty Company with the intention that it become immediately operative. Those were the grounds pleaded by Pruitt as to why he says the release is not now binding on him. It follows that appellants are entitled to a reversal of the judgment.

The judgment is reversed and judgment is here rendered declaring that the release or settlement agreement executed by Pruitt on December 28, 1970, is a valid and binding agreement and one effect of it is to bar Pruitt from suing the appellants herein for damages arising out of the November 19, 1970, car wreck between the truck driven by Pruitt and the car driven by Buttrill.