Margaret U. WILLIAMS and David E. Williams, Petitioners,

v.

Stephen GLASH, Respondent.

No. C-8786.

Supreme Court of Texas.

May 2, 1990.

Rehearing Overruled May 30, 1990.

Timothy A. Beeton, Laurette T. Williams, Texas City, for petitioners.

David E. Leuders, Michael W. Cooper, Houston, for respondent.

OPINION

DOGGETT, Justice.

The question presented is whether execution of the release for personal injuries in this cause bars a subsequent suit for an injury unknown at the time of signing. The trial court granted summary judgment against Petitioners Margaret and David Williams based on execution of a release. The court of appeals affirmed. 769 S.W.2d 684. We reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings.

Margaret Williams ("Williams") was a passenger in her family car when it was struck from behind by a car driven by the respondent Stephen Glash. While damage to the Petitioners' car was apparent at the time of the accident, there were no observable injuries. Williams immediately contacted State Farm Mutual Automobile Insurance Company, Glash's insurer, who advised Williams to bring the car to its local office for an appraisal of the property damage claims. State Farm estimated the cost of repairs at $889.46 and provided Williams a check payable for that precise amount.

At the State Farm office, Williams was asked to complete a claim form containing a question as to whether anyone had been injured by the accident. She checked "No" in response. There was no negotiating or bargaining for release of a personal injury claim; only property damage to the car was discussed. Nonetheless, the back of the check contained language purporting to release personal injury claims, providing that:

> The undersigned payee accepts the amount of this payment in full settlement of all claims for damages to property and for bodily injury whether known or unknown which payee claims against any insured under the policy shown on the face hereof, or their respective successors in interest, arising out of an accident which occurred on or about the date shown. This release reserves all rights of the parties released to pursue their legal remedies, if any, against such payee.

This release language was never explained to nor discussed with Williams or her husband. The face of the check contained a State Farm code, "200–1", denoting the settlement of a property claim, rather than a separate code used by the insurer for personal injury claims. Petitioners subsequently endorsed the check over to the garage that repaired their car.

Williams was later diagnosed as having temporomandibular joint syndrome ("TMJ"), causing head and neck pain, as a result of the accident. Both the trial court and the court of appeals found that suit for this injury was barred by execution of the release.

Petitioners seek to avoid the effect of the release, imploring this court to follow the "modern trend" of setting aside releases when the injury later sued for was unknown at the time of signing. *See generally,* Annot., 13 A.L.R. 4th 686 (1982 and Supp.1989). It is true that a majority of our sister states would, under a variety of theories, permit invalidation of the release under the circumstances presented in this case. *Id.*[1] The most common basis for invalidation is the doctrine of mutual mistake, which mandates that a contract be avoided "[w]here a mistake of both parties at the time the contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances." Restatement (Second) of Contracts § 152

---

1. *See, e.g., Witt v. Watkins,* 579 P.2d 1065 (Alaska 1978); *Dansby v. Buck,* 92 Ariz. 1, 373 P.2d 1 (1962); *Casey v. Proctor,* 59 Cal.2d 97, 28 Cal. Rptr. 307, 378 P.2d 579 (1963) (applying California statute); *Gleason v. Guzman,* 623 P.2d 378 (Colo.1981); *McGuirk v. Ross,* 53 Del. 141, 166 A.2d 429 (1960); *Wells v. Rau,* 129 App.D.C. 253, 393 F.2d 362 (1968); *Boole v. Florida Power & Light Co.,* 147 Fla. 589, 3 So.2d 335 (1941); *Ranta v. Rake,* 91 Idaho 376, 421 P.2d 747 (1966); *Ruggles v. Selby,* 25 Ill.App.2d 1, 165 N.E.2d 733 (Ill.App.Ct.1960, cert. denied); *Reed v. Harvey,* 253 Iowa 10, 110 N.W.2d 442 (1961); *Dorman v. Kansas City Terminal Ry. Co.,* 231 Kan. 128, 642 P.2d 976 (1982) (FELA case not distinguishable from state law); *Hall v. Strom Constr. Co.,* 368 Mich. 253, 118 N.W.2d 281 (1962); *Doud v. Minneapolis S.R. Co.,* 259 Minn. 341, 107 N.W.2d 521 (1961); *Frahm v. Carlson,* 214 Neb. 532, 334 N.W.2d 795 (1983); *Poti v. New England Road Co.,* 83 N.H. 232, 140 A. 587 (1928); *Mangini v. McClurg,* 24 N.Y.2d 556, 301 N.Y.S.2d 508, 249 N.E.2d 386 (1969); *Caudill v. Chatham Mfg. Co.,* 258 N.C. 99, 128 S.E.2d 128 (1962); *Mitzel v. Schatz,* 175 N.W.2d 659 (N.D. 1970); *Sloan v. Standard Oil Co.,* 177 Ohio St. 149, 203 N.E.2d 237 (1964); *K.C. Motor Co. v. Miller,* 185 Okl. 84, 90 P.2d 433 (1939); *Herndon v. Wright,* 257 S.C. 98, 184 S.E.2d 444 (1971); *Bowman v. Johnson,* 83 S.D. 265, 158 N.W.2d 528 (1968) (applying state statute); *Warren v. Crockett,* 211 Tenn. 173, 364 S.W.2d 352 (1962); *Reynolds v. Merrill,* 23 Utah 2d 155, 460 P.2d 323 (1969); *Seaboard Ice Co. v. Lee,* 199 Va. 243, 99 S.E.2d 721 (1957); *Finch v. Carlton,* 84 Wash.2d 140, 524 P.2d 898 (1974); *Krezinski v. Hay,* 77 Wis.2d 569, 253 N.W.2d 522 (1977).

(1981). Following the modern trend, the Restatement expressly recognizes avoidance of personal injury releases when, in view of the parties' knowledge and negotiations, the release language "flies in the face of what would otherwise be regarded as a basic assumption of the parties." *Id.* comment f.

■■■ Under Texas law, a release is a contract and is subject to avoidance, on grounds such as fraud or mistake, just like any other contract. *Cf. Loy v. Kuykendall*, 347 S.W.2d 726, 728 (Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.) (treating release as a contract subject to rules governing construction thereof). Pursuant to the doctrine of mutual mistake, when parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be avoided. *See, e.g., ALG Enterprises v. Huffman*, 660 S.W.2d 603, 606 (Tex.App.—Corpus Christi 1983), *aff'd as reformed per curiam*, 672 S.W.2d 230 (Tex.1984). The parol evidence rule does not bar extrinsic proof of mutual mistake. *Santos v. Mid-Continent Refrigerator Co.*, 471 S.W.2d 568, 569 (Tex.1971) (per curiam). The law of mutual mistake does not, of course, preclude a person from intentionally assuming the risk of unknown injuries in a valid release.

■■■ However, whether the parties to a release intended to cover an unknown injury cannot always be determined exclusively by reference to the language of the release itself. It may require consideration of the conduct of the parties and the information available to them at the time of signing. In a subsequent suit for an unknown injury, once the affirmative defense of release has been pleaded and proved, the burden of proof is on the party seeking to avoid the release to establish mutual mistake. The question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, which would necessitate trial to a jury in all such cases, but rather solely by objective circumstances surrounding execution of the release, such as the knowledge of the parties at the time of signing concerning the injury, the amount of consideration paid, the extent of negotiations and discussions as to personal injuries, and the haste or lack thereof in obtaining the release. *See* Restatement (Second) of Torts § 152 comment f (1981).

■■ We then turn to an application of the mutual mistake factors in this case. As this is a summary judgment case, the issue on appeal is whether State Farm met its burden of establishing that there exists no genuine issue of material fact, thereby entitling it to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). All doubts as to the existence of a genuine issue of material fact are resolved against the movant, and we must view the evidence in the light most favorable to the Petitioners. *Great American Reserve Insurance Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Summary judgment evidence manifesting Williams' objective intent shows that she had no knowledge of the TMJ injury at the time of signing the release. She neither discussed nor bargained for settlement of a personal injury claim, and the amount of consideration received was the exact amount of the property damage to her car. State Farm similarly had no knowledge of the TMJ injury and, in fact, used a code on the check indicating the settlement of property damage claims only. The only evidence that these parties intended to release a claim for unknown personal injuries is the language of the release itself. This summary judgment evidence is sufficient to establish the existence of a genuine issue of fact as to whether the parties intended the release to cover the injury for which suit was later brought.

■ The one case cited by State Farm as controlling precedent misapplies the Texas law of mutual mistake and is, therefore, unpersuasive. *McClellan v. Boehmer*, 700 S.W.2d 687 (Tex.App.—Corpus Christi 1985, no writ). In *McClellan* and in *Houston & T.C.R. Co. v. McCarty*, 94 Tex. 298, 60 S.W. 429 (1901), the courts were willing to look to the intent of the parties for the purpose of interpreting and applying the release but not to alter the unambiguous

language of the contract. *McClellan*, 700 S.W.2d at 692; *McCarty*, 94 Tex. at 303, 60 S.W. at 432. When mutual mistake is alleged, the task of the court is not to interpret the language contained in the release, but to determine whether or not the release itself is valid. We overrule *McCarty* and disapprove *McClellan* to the extent that they give controlling weight to ·the language of the release to defeat a claim of mutual mistake.[2]

We do not today, as the dissent claims, release an injured tort victim from an unfair bargain. Rather, we hold only that the law of mutual mistake applies to personal injury releases the same as to other contracts. If it can be established that a release sets out a *bargain that was never made*, it will be invalidated. If the objective manifestation of the parties' intent—*i.e.*, their conduct—indicates that no release of unknown personal injuries was contemplated, the courts cannot provide intent for them. The dissent is willing to hold the parties to a written agreement that is contrary to their intent and understanding and to ignore the law of mutual mistake, granting as a result a windfall to the insurer by releasing it from claims that it is contractually obligated to pay. A majority of our sister states have refused to follow such a harsh rule; and today we join them.[3]

The doctrine of mutual mistake must not routinely be available to avoid the results of an unhappy bargain. Parties should be able to rely on the finality of freely bargained agreements. However, in narrow circumstances a party may raise a fact issue for the trier of fact to set aside a release under the doctrine of mutual mistake. Because there is some evidence of such circumstances here, we reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings consistent with this opinion.

SPEARS, J., joined by COOK and HECHT, JJ., dissent.

SPEARS, Justice, dissenting.

What the court has really decided today is that an injured tort victim should not be held to his bargain if the bargain later appears unfair. In order to reach this result, the court relies on the doctrine of mutual mistake and a long string citation. Yet, the reality is that the cases from other jurisdictions present a jumbled mish-mash of reasonings and results. The "mutual mistake" rationale does not adequately explain their holdings. *See Casey v. Proctor*, 59 Cal.2d 97, 28 Cal.Rptr. 307, 378 P.2d 579, 587 (1963). Therefore, rather than trying to resolve this case by simple string citation, the court ought to engage in a straight-forward analysis of the issue. *Cf.* Holmes, *The Path of the Law*, 10 Harv.L. Rev. 457, 466–67 (1897) (encouraging the candid articulation of judicial reasoning).

Two competing interests are involved. On the one hand, the law favors the peaceful settlement of disputes and the orderly resolution of claims. On the other hand, the law favors the just compensation of accident victims. Our dilemma is to resolve these competing interests, and we ought to do so openly rather than hiding behind the facade of mutual mistake.

Because I believe the law, in general, is better served by encouraging settlements,

2. Although *Berry v. Guyer*, 482 S.W.2d 719 (Tex. Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.), *Champlin v. Pruitt*, 539 S.W.2d 356 (Tex. Civ.App.—Fort Worth 1976, writ ref'd n.r.e.), and *Lawson v. Ulschmid*, 578 S.W.2d 434 (Tex. Civ.App.—Waco 1979, writ ref'd n.r.e.), are not cited by State Farm and are factually distinguishable, to the extent any language of those opinions conflicts with our decision today, they are disapproved.

3. While condemning the use in this opinion of a string-cite of cases from other states, the dissent nonetheless relies on a string-cite of its own to support deviation from the majority rule avoiding releases for unknown injuries. While in each of these cases the release scrutinized was upheld, it is far from clear that those courts would uphold the release before the court today. *See, e.g., Maltais v. National Grange Ins. Co.*, 118 N.H. 318, 386 A.2d 1264, 1269 (1978) (release upheld because no evidence that "accident caused an injury more severe than originally thought or aggravated a preexisting condition of which the parties were originally unaware").

I would uphold the release and affirm the summary judgment in favor of Glash. In its effort to afford equitable relief, the court renders useless most releases. How is one to buy peace and settle a claim? If the release here can be avoided, then no release buys peace until the statute of limitations has run. "Consideration of the conduct of the parties and the information available to them at the time" will present a fact question so as to require a trial in every instance. Bad facts make bad law and that is what has happened here.

Insurers are now faced with a Hobson's choice. If they settle claims promptly, they are not protected from the later assertion of unknown claims. If they refuse to settle until all injuries are known, then they face potential liability under a bad faith claim. *See Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex. 1988). Their only alternative is to settle known damages only and this defeats their reason for settling. What the insurer wants is to buy peace and put an end to any further claims; this is the very essence of its position. Any mistake as to the nature of injuries is strictly unilateral, not mutual.

Courts cannot legitimately cast themselves in the role of saving people from bad bargains. This sort of benevolent paternalism oversteps the boundaries of our proper role in society. In the short run, it may make life easier for one injured party, but in the long run it distorts the law and creates more problems than it solves. The Maryland court expressed a similar view when it stated:

> We are convinced that our society will be best served by adherence to the traditional methodology for interpreting contracts.... In our view, the bastardization of the well-founded principles concerning mutual mistake of fact is entirely too high a price to pay for the obtention of an unprincipled, if temporarily desirable, result.

*Bernstein v. Kapneck*, 290 Md. 452, 430 A.2d 602, 606–608 (1981). And numerous other sister states have also refused to go along with the so-called "modern trend." [1] *Boles v. Blackstock*, 484 So.2d 1077 (Ala. 1986); *Kennedy v. Bateman*, 217 Ga. 458, 123 S.E.2d 656 (1961); *Castro v. Chicago, R.I. & P.R. Co.*, 83 Ill.2d 358, 47 Ill.Dec. 360, 415 N.E.2d 365 (Ill.1980), *cert. denied*, 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981); *Hybarger v. American States Ins. Co.*, 498 N.E.2d 1015 (Ind.Ct.App.—1st Dist.1986); *Reynard v. Bradshaw*, 196 Kan. 97, 409 P.2d 1011 (1966); *Johns v. Kubaugh*, 450 S.W.2d 259 (Ky.1970); *Tewksbury v. Fellsway Laundry, Inc.*, 319 Mass. 386, 65 N.E.2d 918 (1946); *Pearson v. Weaver*, 252 Miss. 724, 173 So.2d 666, 669 (1965); *Sanger v. Yellow Cab Co.*, 486 S.W.2d 477 (Mo.1972); *Sibson v. Farmers Ins. Group*, 88 Nev. 417, 498 P.2d 1331 (1972); *Maltais v. National Grange Mut. Ins. Co.*, 118 N.H. 318, 386 A.2d 1264 (1978) [2]; *Raroha v. Earle Finance Corp.*, 47 N.J. 229, 220 A.2d 107 (1966); *Wheeler v. White Rock Bottling Co.*, 229 Or. 360, 366 P.2d 527 (1961); *Emery v. Mackiewicz*, 429 Pa. 322, 240 A.2d 68 (1968); *Boccarossa v. Watkins*, 112 R.I. 551, 313 A.2d 135 (1973).

Moreover, in some of the cases that have allowed releases to be avoided, the courts have at least moderated their decisions by imposing a higher burden of proof on the plaintiff. They have required clear and convincing proof that a mutual mistake was made or that the release was not fairly and knowingly made. *E.g., Witt v. Wat-*

**1.** I dislike the use of string-cites, but it was the majority's choice to rely on this mode of analysis. I would be happy to delete *all* citation to other states and rely solely on Texas authority for this decision.

**2.** The majority attacks *Maltais* as an example of how, for each case that upheld a release, "it is far from clear that those courts would uphold the release before the court today." However, the same can be said of the cases cited by the majority. In cases that have invalidated releases, it is far from clear that those courts would invalidate the release before this court today. *See, e.g., Dorman v. Kansas City Terminal Ry. Co.*, 231 Kan. 128, 642 P.2d 976, 978 (1982) (In an FELA suit for back injuries, the court recognized a fact question on mistake since the release specifically described the plaintiff's injuries as being "to my left thigh and a laceration to my forehead.").

*kins,* 579 P.2d 1065 (Alaska 1978); *Ranta v. Rake,* 91 Idaho 376, 421 P.2d 747 (1966); *Birch v. Keen,* 449 P.2d 700 (Okla.1969); *Seaboard Ice Co. v. Lee,* 199 Va. 243, 99 S.E.2d 721 (1957). By refusing to impose any higher burden, this court steps beyond even these more moderate decisions in other jurisdictions.

Finally, almost as an afterthought, the court looks to Texas precedent. In order to allow for the invalidation of this release, the court must overrule *Houston & T.C.R. Co. v. McCarty,* 94 Tex. 298, 60 S.W. 429 (1901) and must disapprove *Lawson v. Ulschmid,* 578 S.W.2d 434 (Tex.Civ.App.— Waco 1979, writ ref'd n.r.e.); *Champlin Petroleum Co. v. Pruitt,* 539 S.W.2d 356 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.); *Berry v. Guyer,* 482 S.W.2d 719 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.); and *McClellan v. Boehmer,* 700 S.W.2d 687 (Tex.App.—Corpus Christi 1985, no writ). In all of these cases, Texas courts upheld the validity of personal injury releases, and the *Ulschmid* case even involved the same "200–1" notation as exists in this case. This is a lot of Texas precedent for the court to address it in such a summary fashion.

I can understand the desire to do equity,[3] but the court's decision today is too one-sided to fall under the rubric of equity. If the court is determined to reach this result, it ought to at least be candid about its reasons. I respectfully dissent. I would affirm the judgment of the court of appeals.

COOK and HECHT, JJ., join in this dissent.

---

**3.** I would prefer that Texas address this problem by legislation rather than by judicial fiat. For example, in Idaho, a personal injury release executed within fifteen days after the occurrence may be disavowed at anytime within one year after the occurrence. Idaho Code § 29–113 (1961). For other similar statutes, see also Md.Ann.Code art. 79, § 11 (1957); Utah Code Ann. § 78–27–3 (1953); N.D.Cent.Code § 9–08–08 (1987); Cal.Civ.Code § 1542 (West 1982); Me.Rev.Stat.Ann. tit. 17, § 3964 (1964); Conn.Gen.Stat. § 52–572a (1958).