**Reginald Danny JOHNSON, Appellant,**

v.

**TEXAS ASSOCIATION OF SCHOOL BOARDS WORKERS' COMPENSATION SELF–INSURANCE FUNDS, Appellee.**

**No. 11–92–060–CV.**

**Court of Appeals of Texas, Eastland.**

**March 25, 1993.**

Jon Hanna, Hanna Law Firm, Erika Copeland, Abilene, for appellant.

Thomas L. Rees, Jr., Frank R. Stamey, McMahon, Surovik, Suttle, Buhrmann, Cobb & Hicks, Abilene, for appellee.

OPINION

McCLOUD, Chief Justice.

This case involves an injured employee who sought to set aside a compromise settlement agreement because of mutual mistake as to the nature and extent of the employee's injuries.

Plaintiff, Reginald Danny Johnson, sued defendant, Texas Association of School Boards Workers' Compensation Self–Insurance Funds, alleging that, when plaintiff settled his workers' compensation claim, both he and defendant relied upon a mistaken diagnosis as to the extent of plaintiff's injuries. Plaintiff alleged that he had other serious injuries unknown at that time and that the settlement agreement was based upon a mutual mistake. The trial court granted defendant's motion for summary judgment. We affirm.

On December 18, 1987, plaintiff fell from a ladder while working for Stamford County Line Independent School District. Plaintiff seriously injured his left foot and left heel. Plaintiff employed an attorney on January 20, 1989, to represent him in the

prosecution of his claim for compensation resulting from the injury. The Texas Industrial Accident Board notified plaintiff and his attorney on August 16, 1989, that plaintiff's claim had been set for a pre-hearing conference on September 13, 1989. On that date, plaintiff and his attorney met with defendant's representative, and the claim was settled.

The "Compromise Settlement Agreement" was signed by plaintiff, his attorney, and defendant's representative. The agreement provided that defendant would pay the sum of $5,000 which was in addition to $12,315 in benefits which had already been paid to plaintiff. Defendant agreed to pay all reasonable and necessary past medical expenses resulting from the injury. The agreement also provided that defendant would pay all future reasonable and necessary hospital and medical expenses until September 13, 1991, that were rendered by or at the direction of Dr. R. Mark Probst. The agreement, which was approved by the Industrial Accident Board on September 19, 1989, provided that "the extent of the injuries is uncertain, indefinite or incapable of being satisfactorily established." See Tex.Rev.Civ.Stat.Ann. art. 8307, § 12 (repealed effective Jan. 1, 1991).

On May 10, 1989, plaintiff was examined by Dr. Chris Albritton, a podiatrist, who concluded that plaintiff should receive a nerve conduction velocity test to determine if plaintiff's pain was neurological rather than musculoskeletal. Dr. Albritton referred plaintiff to Dr. Rexford K. Anderson, Jr., for testing.

After the compromise settlement agreement was signed and approved, Dr. Anderson performed a nerve conduction velocity test on October 4, 1989, and concluded: "Consider lumbosacral HNP. Recommend further testing." On October 26, 1989, Dr. Richard A. Pratt examined plaintiff and reviewed a recent CT scan of plaintiff's lumbar spine. Dr. Pratt noted that the scan showed "annular bulging of disc material at L3–4 together with bulging of disc material at the L4–5 space and facet hypertrophy giving radiographic diagnosis of spinal stenosis at this level." Dr. Pratt advised plaintiff to consider lumbar myelography to better clarify the extent of plaintiff's condition.

Plaintiff contends that his back condition was caused by the December 18, 1987, injury. The summary judgment proof indicates that neither plaintiff nor defendant were aware of plaintiff's back condition when the parties entered into the compromise settlement agreement.

■ Plaintiff cites *Williams v. Glash*, 789 S.W.2d 261 (Tex.1990), contending that he has raised a question of fact as to mutual mistake. The court in *Williams* overruled *Houston & T.C.R. Co. v. McCarty*, 94 Tex. 298, 60 S.W. 429 (1901), and held that, in determining the issue of mutual mistake, "controlling weight" will no longer be given to the language contained in a release to determine whether the release is valid. In *McCarty*, the injured party executed a release when the parties thought the injured party's only injury was a dislocated ankle. Thereafter, it was discovered that the injured party sustained serious additional personal injuries. The release purported to release all claims for personal injuries. The court in *McCarty* held that the doctrine of mutual mistake was not available to set aside a release purporting to release all claims for personal injuries.

The rule announced in *McCarty*, rejecting the theory of mutual mistake as a ground for setting aside a personal injury "release," has been applied in workers' compensation cases involving compromise settlement agreements. *Mullens v. Texas Employers' Insurance Association*, 507 S.W.2d 317 (Tex.Civ.App.—Waco 1974, writ ref'd n.r.e.). We conclude that the rule announced in *Williams*, overruling *McCarty*, also applies in workers' compensation cases involving a compromise settlement agreement.

■ In *Williams*, the injured party, Margaret Williams, executed a release "immediately" after she had been in an automobile accident. The release, which was contained on the back of the settlement check given to Williams, provided that the payee accepted the payment in full settlement of

all claims for property damages and for "bodily injury whether known or unknown." Williams later discovered that she had sustained a personal injury to her head and neck as a result of the collision. The summary judgment proof in *Williams* clearly showed that, at the time the release was executed, neither Williams nor Stephen Glash' insurer, who issued the check, was aware that Williams had suffered any personal injuries. The amount of money paid to Williams was the exact amount of the property damage to the Williams' car. Neither Williams nor the insurer discussed nor bargained for the settlement of a "personal injury" claim. The Supreme Court noted that the only evidence that the parties intended to release a claim for unknown personal injuries was the language of the release itself.

In order to prevent a trial in every "mutual mistake" case involving a personal injury release, the court in *Williams* stated that the question was not to be determined by "self-serving subjective statements of the parties' intent" but rather "solely" by "objective circumstances" surrounding the execution of the release. The court listed the following objective circumstances:

(1) knowledge of the injury by the parties at the time the release was signed;

(2) the amount of consideration paid;

(3) the extent of negotiations and discussions as to personal injuries; and,

(4) the haste or lack thereof in obtaining the release.

We hold that *Williams* is clearly distinguishable. Here, plaintiff was represented by experienced counsel, and the rule in Texas at that time was that a compromise settlement agreement could not be set aside on the grounds of mutual mistake as to the nature and extent of the employee's injuries. All parties were fully aware that plaintiff had received serious injuries as a result of the fall, and plaintiff had been treated by several doctors. Article 8307, section 12 expressly provided that the Board could approve a compromise settlement agreement where the "extent" of the injury was "uncertain" or "indefinite." As a part of the settlement, plaintiff was to receive future medical payments for two years.

The Supreme Court in *Williams* held that, in "narrow circumstances," a party may raise a fact issue to set aside a personal injury settlement release under the doctrine of mutual mistake. As observed by the dissent in *Williams*, the case involved "bad facts." We do not construe *Williams* as announcing the total demise of the personal injury settlement release. However, if the compromise settlement agreement in this case can be set aside because the parties did not know the full nature and extent of plaintiff's injuries when the settlement was reached, then the dissent in *Williams* has correctly predicted that "no release buys peace until the statute of limitations has run." See Michael A. Plotz, Comment, *Personal Injury Releases may be set Aside Under the Doctrine of Mutual Mistake when the Injury Later Sued for Was Unknown at the Time of Signing: Williams v. Glash, 789 S.W.2d 261 (Tex. 1990)*, 32 S.Tex.L.Rev. 311 (1991); Tomi Kay Mills, Note, *Personal Injury Settlement Releases are Avoidable on Grounds of Mutual Mistake: Williams v. Glash, 789 S.W.2d 261 (Tex.1990)*, 22 Tex.Tech L.Rev. 309 (1991).

The objective facts in this case do not fit the "narrow circumstances" recognized in *Williams*. We hold that the summary judgment proof fails to raise a material question of fact as to mutual mistake.

The judgment of the trial court is affirmed.