TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00470-CV






V. Bruce Evans, as assignee of Innovative Mechanical Systems, Inc., Appellant



v.



American Standard, Inc., d/b/a The Trane Company, Appellee






FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY


NO. 217,600, HONORABLE ORLINDA L. NARANJO, JUDGE PRESIDING 







 Following a trial to the court, Bruce Evans, president of Innovative Mechanical
Systems, Inc., ("IMS") appeals a take-nothing judgment and contends the trial court erroneously
found that IMS had previously released all claims in this lawsuit alleged against American
Standard, Inc. d/b/a The Trane Company ("Trane"). (1) By thirteen points of error, IMS challenges
the trial court's findings of fact and conclusions of law and complains about its ruling that IMS
failed to show good cause to present a witness who was not designated for trial. We will affirm
the trial-court judgment. 



BACKGROUND


 To better understand this lawsuit, it is necessary to explain some of the history of
the parties' relationship. In 1988, IMS became a manufacturer's representative for Trane in
Austin. IMS sold Trane air conditioning and heating units primarily to the Austin Independent
School District. The business relationship between IMS and Trane worked as follows: (1) IMS
solicited and obtained orders for air conditioning and heating units; (2) IMS reported the orders
to Trane who then shipped the units directly to the corresponding AISD school; (3) AISD paid
IMS in full for each unit; (4) IMS paid a portion of the sum collected to Trane; and (5) IMS
contracted with third parties to install the units and perform any necessary warranty work. 

 IMS and Trane disagreed about the portion of the sum collected by IMS that it was
to send to Trane relating to two AISD projects. In January 1992, IMS and Trane executed a trust
agreement to resolve the dispute. Some of the money owed to Trane from IMS on the two AISD
projects was placed in trust pending inspection of the equipment and performance of any necessary
warranty work. According to the terms of the trust, any expenses incurred by IMS that related
to warranty work on the two projects were to be submitted to Trane and then paid out of the trust. 
 In July 1992, IMS sued Trane seeking alleged lost profits due to breach of contract
and tortious interference with business relations regarding AISD transactions that occurred
between October 1990 and August 1992. On August 18, 1992, IMS and Trane executed a
compromise and settlement agreement. The parties agreed that Trane would pay IMS $75,000 and
would execute and deliver to IMS a full and complete release in return for a full and complete
release from IMS. Specifically, the compromise and settlement agreement provided that Trane
would sign a release 


of all claims, demands, and causes of action whatsoever, known or unknown, past,
present, or future, whether or not arising out of the transactions referred to in
[IMS's] Original Petition and made the basis of the . . . litigation.



In exchange for this, IMS agreed to execute and deliver to Trane a full and complete release


of all claims, demands, and causes of action whatsoever, known or unknown, past,
present, or future, arising out of the transactions referred to in [IMS's] Original
Petition and made the basis of the . . . litigation. 



As part of the compromise and settlement agreement, the parties also agreed that the release would
not relate to the two projects covered by the trust agreement. On the same day the parties
executed the mutual release which provided as follows:


1. [IMS] has this day released and by these presents does release, acquit, and
forever discharge [Trane] a Delaware Corporation, their agents, servants, and
employees, and all persons, natural or corporate, in privity with them or any of
them, from any and all claims or causes of action of any kind whatsoever, at
common law, statutory or otherwise, that [IMS] has or might have, known or
unknown, now existing or that might arise hereafter, directly or indirectly
attributable to the above-described transactions or otherwise, it being intended to
release all claims of any kind which [IMS] might have against those hereby
released, whether asserted in the above-captioned suit or not. 


2. [Trane] has this day released and by these presents does release, acquit, and
forever discharge [IMS], its agents, servants, and employees, and all persons,
natural or corporate, in privity with it, from any and all claims or causes of action
of any kind whatsoever, at common law, statutory or otherwise, that [Trane] has
or might have, known or unknown, now existing or that might arise hereafter,
directly or indirectly attributable to the above-described transactions or otherwise,
it being intended to release all claims of any kind which [Trane] might have against
those hereby released, whether asserted in the above-captioned suit or not. 


3. It is understood and agreed that this release specifically excludes and does not
relate to all liabilities, rights and claims growing out of or relating to that certain
Trust Agreement between [IMS] and [Trane]. . . . 


It is expressly understood and agreed that the terms hereof are contractual and not
merely recitals and that the agreements herein contained and the consideration
transferred is to compromise doubtful and disputed claims, avoid litigation, and
buy peace, and that no payments made nor releases or other consideration given
shall be construed as an admission of liability, all liability being expressly denied.



Trane paid IMS $75,000 as consideration for the release. Following the execution of the release,
the trial court dismissed the case. 

 In October 1992, there was approximately $23,000 remaining in the trust account. 
IMS submitted a statement of account to Trane for approximately $10,000 to be paid out of the
trust. Trane objected to the amount contending that it did not owe $10,000 to IMS because IMS
had released the claims listed on the statement of account in the August 1992 mutual release. 
Under the terms of the trust agreement, the parties went to binding arbitration. The arbitrator
found that only a portion of the $10,000 requested by IMS related to the two schools listed in the
trust agreement. The arbitrator entered an order addressing the claims related to the two schools
covered by the trust agreement and did not address the remaining claims. The arbitrator awarded
IMS $820 and the remaining amount went to Trane. 


 In July 1993, IMS brought this lawsuit against Trane seeking to recover the
amounts not addressed by the arbitration. On March 20, 1995, IMS filed its amended petition and
submitted copies of statements of account dated October 10, 1992, and January 27, 1995, it had
sent to Trane. The 1992 statement showed a total due of $9626.43 which represented amounts
submitted by third-party contractors to IMS that IMS claimed it had paid for warranty work related
to Trane units. The 1995 statement reflected amounts IMS charged Trane for "services performed
in investigating, coordinating, [and] scheduling" repairs to defective Trane equipment on AISD
projects from September 30, 1991 to September 29, 1992 totaling $9450. (2) Trane generally denied
the claims and asserted the affirmative defenses of accord and satisfaction, release, res judicata,
and collateral estoppel. Included among Trane's defensive arguments was that IMS had released
all of the claims in this lawsuit in the August 1992 mutual release.

 The trial court agreed with Trane and ruled that IMS take nothing against Trane. 
The trial court entered findings of fact and conclusions of law which included the following: 
Trane sold numerous air conditioning units to IMS. The items listed in IMS's statements of
account were not sold to Trane by IMS, rather the invoices listed on the statements were from
third parties to IMS during September 1991 and August 1992 for which IMS was seeking
reimbursement from Trane. At the time these expenses were incurred, Trane did not know and
had no reason to know that they were being incurred. Trane also did not know that IMS expected
to be reimbursed for these expenses. On January 31, 1992, the parties executed a trust agreement
that related to two AISD projects only. On August 18, 1992, the parties executed a compromise
and settlement agreement that excluded liabilities, rights or claims related to the trust agreement. 
Also on August 18, the parties executed a mutual release that specifically excluded claims related
to the trust agreement. The parties intended that the mutual release would include the claims
asserted in this lawsuit. Trane paid $75,000 in return for the execution of the compromise
settlement agreement and the mutual release. Based upon these findings, the trial court concluded
that IMS's claims had been previously released. 


DISCUSSION


Failure to Show Good Cause


 By point of error twelve, IMS contends that the trial court abused its discretion by
not allowing Ellis Guiles, one of IMS's witnesses, to testify because at trial IMS exhibited good
cause for allowing his testimony. IMS acknowledges that, due to an oversight, it did not list
Guiles in its response to Trane's interrogatory seeking the names of persons with knowledge of
relevant facts. IMS contends that, despite this failure, it demonstrated to the trial court that good
cause existed to allow Guiles to testify because Trane did not properly respond to IMS's discovery
requests and Guiles's testimony was necessary to IMS's case. The discovery documents to which
IMS refers do not appear in the record. We construe the trial court's finding in favor of the
judgment and conclude that the trial court did not abuse its discretion by failing to find good cause
for this undesignated witness to testify. We overrule point of error twelve. 


Legal and Factual Sufficiency of the Evidence


Standard of Review

 IMS contends in twelve other points of error that the evidence is legally and factual
insufficient to support the judgment. In reviewing a legal sufficiency challenge, the appellate court
must consider all of the record evidence in a light most favorable to the party in whose favor the
judgment has been rendered, and every reasonable inference deducible from the evidence is to be
indulged in that party's favor. Associated Indem. Corp. v. Cat Contracting, Inc., 964 S.W.2d
276, 285-86 (Tex. 1998). If any evidence of probative force exists then the legal sufficiency
challenge must be overruled and the finding upheld. ACS Investors, Inc. v. McLaughlin, 943
S.W.2d 426, 430 (Tex. 1997). A trial court's findings of fact are reviewed for factual sufficiency
of the evidence under the same legal standard as applied to review jury verdicts for factual
sufficiency of the evidence. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996). In reviewing a
factual sufficiency challenge, the court of appeals must weigh all of the evidence in the record. 
Id. Findings may be overturned only if they are so against the great weight and preponderance
of the evidence as to be clearly wrong and unjust. Id. (citing Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986)). 

 IMS acknowledges that "this case seems to turn completely upon [whether] there
was a valid and enforceable release of the specific warranty claims [IMS] asserted against
[Trane]." IMS contends that the evidence is legally and factually insufficient to support the trial
court's finding and conclusion that the mutual release covered the $19,076.43 worth of claims. 


Mutual or Unilateral Mistake

 In points of error eight and nine, IMS contends that either a mutual or a unilateral
mistake occurred when the parties executed the release because IMS never intended to release the
warranty claims at issue in this case. (3) 

 Evans and Ellen Trick, Trane's marketing manager, were the only two witnesses
to testify at trial. Evans testified that he never intended the claims in this lawsuit to be covered
by the August 1992 release. It was his impression that, when the parties discussed the terms of
the release, the claims for warranty work performed by contractors and the related expenses in this
lawsuit would not be covered and would be addressed separately. It was his impression that,
despite executing the release, he would still be paid for any warranty work claims including those
that existed before executing the release. Evans believed all warranty work he had contracted
would be paid out of the trust even though many of the claims did not relate to the two projects
covered by the trust. He believed this despite his acknowledgment that Trane never provided any
assurance of payment on the warranty claims. Trick testified that it was Trane's intent that both
parties release all claims against each other with the exception of claims related to the two AISD
projects covered by the trust. 

 IMS relies upon Williams v. Glash for the proposition that the mutual release should
be avoided based upon the doctrine of mutual mistake. 789 S.W.2d 261 (Tex. 1990). In
Williams, a woman involved in a car accident sued for personal injuries that did not become
apparent until after she executed a global release. Id. at 262-63. The release was given by the
plaintiff at a time when she believed she had suffered no personal injuries. In fact, while the
release was a global release, there was evidence that the parties had not considered or discussed
personal injuries. Additionally, the insurance draft issued in exchange for the release contained
an internal code indicating that the release was intended to cover property damage. The Williams
court listed four factors for assessing a mutual mistake related to a release: (1) the knowledge of
the parties concerning the injury at the time the release was executed; (2) the amount of
consideration; (3) the extent of discussions and negotiations as to the released claims; (4) the haste
or lack thereof in obtaining the release. Id. at 264. The Williams court reversed the trial court's
summary judgment that had been rendered in favor of the insurer and determined that there was
some evidence of a mutual mistake with regard to the release of personal injury claims. Id. at 264-65. 

 We conclude that the facts in this case are distinguishable from those in Williams.
At the time the parties executed the release, most of the warranty claims raised in this lawsuit
already existed. The $75,000 paid by Trane to IMS for the release was substantial considering
the claims of this lawsuit totaled $19,076.43. The mutual release resulted after lengthy
negotiations during which both sides were represented by counsel. The release repeatedly refers
to the parties releasing all existing claims or possible claims that might arise between the two
parties in the future. The parties specifically excluded the two properties covered by the trust
from the release; however, they did not specifically exclude any other claims. The record does
not support a finding of mutual mistake as a matter of law nor does it reflect that the trial court's
finding that both parties intended the release to encompass the claims in this lawsuit is against the
great weight and preponderance of the evidence. 

 Additionally, IMS argues that because it never intended to release the claims in this
lawsuit, it is entitled to equitable relief on the ground of unilateral mistake. To be entitled to
equitable relief on the ground of unilateral mistake, a party must show: 


(1) the mistake is of so great consequence that to enforce the contract as made
would be unconscionable; (2) the mistake relates to a material feature of the
contract; (3) the mistake must have been made regardless of the exercise of
ordinary care; and (4) the parties can be placed in status quo in the equity sense,
i.e., recission must not result in prejudice to the other party except for the loss of
his bargain. 




Hayes v. E.T.S. Enterprises, Inc., 809 S.W.2d 652, 658 (Tex. App.--Amarillo 1991, writ denied)
(citing Roland v. McCullough, 561 S.W.2d 207 (Tex. Civ. App.--San Antonio 1977, writ ref'd
n.r.e.)). IMS argues that "it would be inequitable and unconscionable for [Trane] to benefit to
[IMS's] detriment." IMS makes this argument despite being given $75,000 for its release of
claims amounting to $19,076.43. The record does not support a finding of unilateral mistake as
a matter of law or reflect that the trial court's finding of release is against the great weight and
preponderance of the evidence. 


 We conclude that the trial court's finding that the parties intended to release the
claims in this lawsuit is supported by the evidence. We overrule points of error eight and nine. 


Specificity of Claims Released

 In point of error six, IMS contends the evidence is legally and factually insufficient
to support the trial court's finding that the mutual release covered its claims against Trane because
the 1992 mutual release does not mention the claims specifically. IMS argues that "particular
attention should be paid to the language of the release describing the claims and causes of action
intended to be discharged." Trane responds that clearly the mutual release covered the claims in
this case. 

 The mutual release provided that IMS released Trane from 


any and all claims or causes of action of any kind whatsoever, . . . that [IMS] has
or might have, known or unknown, now existing or that might arise hereafter,
directly attributable to the above-described transactions or otherwise, it being
intended to release all claims of any kind which [IMS] might have against those
hereby released, whether asserted in the above-captioned suit or not. . . . It is
expressly understood and agreed that the terms hereof are contractual and not
merely recitals and that the agreements herein contained and the consideration
transferred is to compromise doubtful and disputed claims, avoid litigation, and
buy peace. . . .



Similarly, Trane agreed to release all claims of any kind it might have against IMS. 

 In Memorial Medical Center of East Texas v. Keszler, the issue was the amount of
specificity required to release a claim. 943 S.W.2d 433 (Tex. 1997). The Keszler court
determined that although a release may not refer specifically to a particular cause of action, the
release may nevertheless effectively encompass such a claim. Id. at 434. In Keszler, the parties
entered into a compromise settlement agreement and signed a mutual release. The parties in
Keszler agreed to release all claims relating to Keszler's relationship with the defendant. Although
Keszler's cause of action was not denominated in the release, since the claim was related to
Keszler's relationship with the defendant, the supreme court held the claim had been "mentioned"
in the releasing document. Id. at 435. 

 IMS and Trane expressed several times in the mutual release that they intended the
release to cover any claims that might arise between the two parties at any time. The parties in
drafting the mutual release specifically excluded claims related to the two projects covered by the
trust but made no exclusionary provision for any other type of existing or potential claim. 
Although Evans believed Trane would pay his warranty expenses not related to the two projects 
out of the trust, this was not addressed in the release. We conclude that sufficient evidence
supports the trial court's finding that IMS's claims in this suit were encompassed in the mutual
release. The trial court's judgment was not clearly wrong and manifestly unjust. We overrule
IMS's sixth point of error. 


CONCLUSION


 The trial court did not abuse its discretion in determining that IMS failed to show
good cause to allow an undesignated witness to testify. The trial court did not err in concluding
that the parties intended the 1992 release to encompass the claims in this lawsuit and accordingly 
did it err in concluding the claims were previously released by the 1992 release. Because of these
holdings, it is unnecessary for us to address IMS's remaining points of error. We affirm the trial
court's judgment.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Jones and Kidd

Affirmed

Filed: February 11, 1999

Do Not Publish
1.   IMS assigned its rights to Evans on November 3, 1997, after this appeal was filed. Although
IMS was represented by counsel through trial, on appeal Evans is proceeding pro se. For
convenience we refer to the parties as IMS and Trane. 
2.   The 1995 statement of account included an additional claim for $315 that IMS withdrew
during trial. 
3.   IMS did not amend its pleadings to specifically assert mutual or unilateral mistake as an
avoidance of the mutual release pleaded by Trane. See Tex. R. Civ. P. 94. However, IMS
obliquely raised the issue in its response to Trane's motion for summary judgment by asserting
that it never intended to release the warranty claims when it signed the release. In an abundance
of caution, we will address the issues of mutual and unilateral mistake even though we question
whether IMS has preserved these arguments for appeal.



ecause
the 1992 mutual release does not mention the claims specifically. IMS argues that "partic