

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00393-CV

———————————————

GRISELDA RAMOS, Appellant

V.

RODRIGO HERNANDEZ AND FREIGHT PRO TRANSPORT, LLC, Appellees

On Appeal from County Court at Law No. 1
Tarrant County, Texas
Trial Court No. 2021-005373-1

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

### I. Introduction

On October 24, 2019, Appellant Griselda Ramos and her incapacitated adult son Cristino were in a car accident with Appellee Rodrigo Hernandez, who was driving for Appellee Freight Pro Transport, LLC. Ramos, as Cristino's next friend, sued Freight Pro in trial-court cause number 096-321522-20 and received court approval of a confidential settlement agreement and release (CSAR). Around half a year after signing the CSAR, Ramos sued Appellees in trial-court cause number 2021-005373-1, seeking recovery for her own personal injuries. Appellees moved for summary judgment, asserting the affirmative defense of release based on the CSAR, and the trial court granted their motion.

In a single issue, Ramos argues that the trial court erred by granting Appellees' summary-judgment motion because a genuine issue of material fact exists about whether she released her personal claims in the CSAR. Because a latent ambiguity exists in the CSAR, we sustain Ramos's issue, reverse the summary judgment, and remand the case to the trial court for further proceedings.

### II. Background

Ramos sued Appellees for negligence to recover for the personal injuries she suffered when Hernandez "failed to maintain a single lane and failed to maintain control of his vehicle, causing a collision with [her] vehicle." Appellees answered with

a general denial and a list of affirmative defenses, including release. They later moved for a traditional summary judgment on that defense.

In their summary-judgment motion, Appellees pointed out that Ramos had previously sued Freight Pro in cause number 096-321522-20, in which a final judgment had been entered on March 10, 2021, and that Ramos had entered into a CSAR with Freight Pro and its insurer to settle the claims arising from the accident. Appellees attached as exhibits to their motion Ramos's original petition in both cases, the final judgment in cause number 096-321522-20, the 13-page CSAR, a copy of the settlement check's deposit receipt, and Ramos's answer to their request for admissions in which she admitted that she had been a plaintiff in the first lawsuit, *Griselda Ramos, as next friend to Cristino Ramos, Jr. v. Freight Pro Transport, LLC.*

The original petition in cause number 096-321522-20 shows that Ramos had sued Freight Pro in her capacity as next friend of her incapacitated adult son Cristino and that the lawsuit was a "friendly suit" because the parties had reached a settlement agreement requiring court approval. *See* 4 Tex. Prac. Guide Torts § 15:284 (explaining that an enforceable settlement of an incompetent's claim must be approved by the court); *see also* Tex. R. Civ. P. 44(2) (stating that the "next friend" or his attorney of record may, with the approval of the court, compromise suits and agree to judgments). The title of the March 10, 2021 final judgment in that case states, "Final Judgment Disposing of All Claims of Cristino Ramos, Jr.," and reflects that the court had approved the CSAR in full settlement of all claims, including disputed claims, "of

3

Plaintiff against Defendant." The judgment identified Cristino as the "Plaintiff," dismissed "any and all claims and causes of action of Plaintiff against Freight Pro" with prejudice, and ordered, adjudged, and decreed that Freight Pro and "its respective agents, employees, servants, representatives, insurers, successors, and assigns (as more fully defined in the [CSAR] approved by the Court) stand[] fully released and discharged of and from all claims, demands, actions or causes of action arising out of the occurrence described in the pleadings herein."

In contrast to the final judgment, the CSAR, signed 13 days later, on March 23, 2021, defined "Plaintiff" much more broadly, stating that the term "shall be construed to encompass Griselda Ramos, Cristino Ramos, Jr., individually along with their spouses (if any), children (if any), and heirs, together with any of their respective executors, administrators, successors, and assigns, and estates." "Defendant," for purposes of the release, included Freight Pro and its employees, among others. The CSAR defined the October 24, 2019 motor-vehicle accident as the "Occurrence," and cause number 096-321522-20 as the "Litigation." The CSAR listed $18,000 in exchange for a broad release, stating,

> Plaintiff releases, acquits, and forever discharges Defendant for and from any and all past, present, or future obligations, claims, demands, actions, or causes of action of any kind whatsoever as a result of the Occurrence, which Plaintiff has or may ever have had, whether based in federal law or state law, contract or tort, common law or statutory law, regulation, or ordinance, whether asserted previously or not as to Defendant, including but not limited to those set out in Cause No. 096-321522-20.

4

The CSAR also provided that "Plaintiff" released "Defendant" from "any claims or causes of action of any kind whatsoever which allegedly caused Plaintiff to sustain damages" and provided a laundry list of types of damages. The CSAR further stated that "Plaintiff accepts and acknowledges receipt of the consideration . . . as a full, complete, final, and binding compromise of matters involving disputed issues as to Defendant as a result of the Occurrence, regardless of whether too little or too much may have been given or accepted."

The CSAR's "procurement of consideration" section contained several express acknowledgments by "Plaintiff" regarding the CSAR's terms, conditions, and effects and noted that in making the settlement, "Plaintiff" had the benefit of the advice of counsel "of their own choice." It also expressly acknowledged that

> [t]he consideration set forth herein is the totality of the consideration exchanged and is all the consideration which they will ever receive, either directly or indirectly, by any means whatsoever, from or on behalf of Defendant as a result of the Occurrence, the Litigation, or any events or transactions described herein.

The CSAR included a merger clause stating that it contained the entire agreement "between Plaintiff and Defendant with regard to the matters set forth herein" and that there were "no other understandings or agreements, verbal or otherwise, between Plaintiff and Defendant."

Ramos signed the CSAR's final page on March 23, 2021. The jurat reflects that Ramos appeared "individually, and as next friend of Cristino," and "upon her oath stated that she ha[d] read the foregoing instrument and executed it for the purposes

5

and consideration therein expressed." It also contained an acknowledgment of Ramos's counsel, "attorney of record for Griselda Ramos, individually, and as next friend of Cristino," stating "that prior to their execution of this [CSAR], [she] explained the document to them."

In her summary-judgment response, Ramos argued that there was a genuine, material fact issue about whether she had released her individual claims against Appellees in the CSAR. She asserted that the first lawsuit had been for Cristino, that he was not a party to the current lawsuit, that she had entered the CSAR to settle Cristino's claims against Freight Pro, and that the CSAR was not a binding contract as to her own personal-injury claims. Ramos contended that "[t]here was never a mutual understanding and assent to the [CSAR] signed by [her] for her individual bodily injury claim[,] i.e.[,] no meeting of the minds." Ramos further argued that an ambiguity existed based on the March 2020 settlement negotiations.[1]

---

[1] Ramos also observed, "Undoubtedly, a procured transcript of [the proceeding in cause number 096-321522-20] would show that the parties agreed the settlement in question was for Cristino . . . only." But Ramos did not indicate in her summary-judgment response that she had tried to procure the transcript and did not request a continuance to do so. In her appellate brief, Ramos attempts to incorporate portions of the hearing transcript, but "Rule 166a(c) forecloses post-summary-judgment supplementation." *Med. RX Servs. LLC v. Georgekutty*, No. 02-21-00017-CV, 2021 WL 6069102, at *3 (Tex. App.—Fort Worth Dec. 23, 2021, no pet.) (mem. op.) (noting that appellants sought to supplement their summary-judgment evidence after summary judgment had been granted). This is a summary-judgment appeal, and the transcript was not before the trial court when it made its ruling; accordingly, we may not consider it. *See* Tex. R. Civ. P. 166a(c); *Balmorhea Ranches, Inc. v. Heymann*, 656 S.W.3d 441, 446 (Tex. App.—El Paso 2022, no pet.) ("As a general rule, the trial court only considers the record as it properly appears when the motion for summary

6

To her response, Ramos attached the original petitions in each case, her October 3, 2019 letter of guardianship for Cristino, the final judgment in cause number 096-321522-20, the CSAR, and a March 2020 email chain.[2] That chain begins with an email from Sheila Carney, a senior claims examiner at Athens Administrators on March 27, 2020, to Isabel Alcantara at Ben Abbot & Associates, PLLC, stating "We are in receipt of the medical records and bills you provided for your client, Cristino Ramos Jr. and have had the opportunity to review same. At this time, we offer the sum of $10,000 to resolve your client's bodily injury claim." Alcantara replied the following Monday, March 30, 2020, stating, "Thank you for your offer of $10,000.00, at this time my client has rejected your offer. I have been instructed to counter demand at $65,000.00."

Although Ramos had filed her notice-of-Section-18.001 affidavits 11 days before filing her summary-judgment response, she did not mention or attach any evidence to her summary-judgment response showing her medical expenses incurred in the accident or demonstrating the parties' awareness (or lack thereof) of those expenses when the CSAR was entered in 2021, and the notice does not include the affidavits. Instead, her notice states that the actual affidavits were "not being filed

---

judgment is heard."); *see* Hon. David Hittner, Lynne Liberato, et al., *Summary Judgments in Texas: State & Federal Practice*, 62 S. Tex. L. Rev. 99, 157 (2022) ("Rule 166a(c) forecloses post-summary judgment supplementation.").

[2]Ramos also indicated her intent to use some of Appellees' discovery responses but did not attach any to her summary-judgment response.

with the [c]ourt." On August 12, 2022, Appellees filed a Section 18.001 counter-affidavit and attached a medical-bill-audit analysis; they filed a supplemental counter-affidavit on September 16, 2022. The analysis attached to each affidavit shows that Ramos underwent medical treatment starting in July 2020.[3]

The trial court held the summary-judgment hearing on July 29, 2022, but it did not sign the order granting summary judgment until September 26, 2022. *See* Tex. R. Civ. P. 166a(c) ("The judgment sought shall be rendered forthwith if [the summary-judgment evidence] on file at the time of the hearing, or filed thereafter and *before judgment* with permission of the court, show[s] that . . . there is no genuine issue as to any material fact." (emphasis added)); *Lance v. Robinson*, 543 S.W.3d 723, 733 (Tex. 2018) (holding that deeds on file with the court at the time of the summary-judgment hearing were proper summary-judgment evidence).

### III. Discussion

In her sole issue, Ramos argues that the trial court erred by granting Appellees' motion because a genuine issue of material fact exists as to a latent ambiguity and no

---

[3]In the medical-bill-audit analysis, Appellees' expert opined that the $67,540 incurred by Ramos for treatment between July 1, 2020, and May 25, 2022, had a reasonable value of $16,317.56. In the medical-bill-audit analysis attached to their supplemental counter-affidavit, their expert opined that the $103,265 in billed charges was excessive and that the total reasonable charges for Ramos's medical expenses were $16,628.66.

meeting of the minds.[4] She complains that a material fact issue exists about whether the parties intended for the CSAR's scope to cover both Cristino's claims and her claim for her own injuries related to the accident. Ramos points out that cause number 096-321522-20's judgment shows that she was never an individually named party before filing her own suit on September 13, 2021, and that she had acted in the prior suit solely in her capacity as Cristino's legal guardian. Ramos further argues that her personal claims for damages were never discussed during the settlement negotiations in Cristino's case, directing us to the March 2020 email chain. She also directs us to the CSAR's footer, which states, "Confidential Settlement Agreement and Release – Cristino Ramos, Jr.," and to the March 11, 2021 check issued in consideration of the CSAR, which lists a single claimant—"Ramos Jr., Cristino"—and "claim no. 3500833," the same claim number referenced in the March 2020 email chain.

## A. Standard of review and applicable law

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors

---

[4]Ramos also raises mutual and unilateral mistake, but as Appellees point out, Ramos did not raise either of these arguments in her summary-judgment response. Accordingly, we may not consider them as a basis for reversal. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all elements of that defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue. *Van v. Peña*, 990 S.W.2d 751, 753 (Tex. 1999); *see Fitts v. Richards-Smith*, No. 06-15-00017-CV, 2016 WL 626220, at *15 (Tex. App.—Texarkana Feb. 17, 2016, pet. denied) (mem. op.) (stating that once the affirmative defense of release is properly pleaded and proved, the burden shifts to the opposing party to produce evidence raising a fact issue on a legal justification for setting aside the release).

In general, a release surrenders legal rights or obligations between the parties to an agreement, extinguishes those claims or causes of action as effectively as would a prior judgment between the parties, and is an absolute bar to any right of action on the released matter. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). To establish the affirmative defense of release, the movant is required to prove the elements of a valid and binding contract: (1) an offer; (2) acceptance; (3) a meeting

10

of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Paveway Concrete Prods., Inc. v. Lee Sicilio Ltd. Three*, No. 2-03-330-CV, 2004 WL 1799856, at *3 (Tex. App.—Fort Worth Aug. 12, 2004, no pet.) (mem. op.).

A release is subject to the normal contract-construction rules, *Finley Res., Inc. v. Headington Royalty, Inc.*, No. 21-0509, 2023 WL 3399104, at *5 (Tex. May 12, 2023), including the rules of ambiguity, *D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 226 (Tex. App.—Fort Worth 2013, no pet.). "If contract language can be given a certain or definite legal meaning when considered as a whole, and in light of the objective circumstances surrounding its execution, the contract is not ambiguous and must be construed as a matter of law." *Finley Res., Inc.*, 2023 WL 33991104, at *6.

We considered ambiguity in the context of a release in another car-wreck case, *Traweek v. Long*, No. 02-20-00311-CV, 2021 WL 733085, at *4 (Tex. App.—Fort Worth 2021, pet. denied) (mem. op.). In *Traweek*, the appellant and her husband signed a release in which they released "any and all claims" arising from the car accident and received a $6,500 settlement amount payable to the appellant's husband. *Id.* at *1. When the appellant sued a year later in her individual capacity, the appellee raised the affirmative defense of release. *Id.* The appellant did not respond to requests for admission, which resulted in deemed admissions that she had freely and voluntarily signed the release agreement after reading it and after her attorney had

11

explained its import to her and that she had "fully understood" the release's "terms and legal effect." *Id.*

To her summary-judgment response, the appellant attached letters between her counsel and the appellee's insurer. *Id.* The letters were sent after she and her husband had signed the release but before she filed suit, and they showed an unsuccessful attempt to settle her individual claims and supported her argument that the release applied only to claims arising from her husband's injuries; she asserted ambiguity and mutual mistake to avoid the release. *Id.* The trial court granted summary judgment, but we could not infer from that ruling that the appellees' objections to the appellant's parol evidence had been sustained. *See id.* at *2 (citing *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018)). We noted that the appellant bore the burden of proof on her two defenses to the appellee's release. *Id.*

In our ambiguity discussion, we observed, "An ambiguity in a release may be patent or latent. A patent ambiguity is evident on the face of the release. A latent ambiguity occurs when a facially unambiguous release is applied to its subject matter and an ambiguity appears by reason of some collateral matter." *Id.* at *4 (citations omitted); *see also URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 765 (Tex. 2018) ("Contract ambiguity comes in two flavors: patent or latent.").

We determined in *Traweek* that the release's language contained a latent ambiguity because it allowed two reasonable interpretations of its scope: (1) the agreement released both the appellant's and her husband's claims arising from the

12

accident or (2) the agreement released the appellant's husband's claims and the appellant's derivative claims arising from her husband's injuries, but not her individual negligence claim arising from her own injuries. 2021 WL 733085, at *5. The latent ambiguity allowed the admission of parol evidence to determine the parties' intent regarding the release's intended scope. *Id.* The appellant's post-release settlement negotiations on her individual negligence claim provided objective evidence of the surrounding circumstances of the parties' mutual understanding of the prior release's effect and raised a genuine, material fact issue regarding the release's scope and interpretation, making summary judgment inappropriate. *Id.*

We further concluded that the appellant's deemed admissions were not outcome-determinative because although she admitted having voluntarily signed and understood the release's terms, she did not admit what those terms *meant* regarding the release's scope. *Id.* The admissions merely established that the release agreement was valid on its face.[5] *Id.*

One of our sister courts faced a similar issue in *Lowe v. Watson*, another automobile-injury case. No. 01-20-00251-CV, 2020 WL 7349506, at *1 (Tex. App.—

---

[5]We also determined that the appellant had raised a fact issue as to mutual mistake based on the post-settlement negotiations in which the appellant sought $22,755.50 in past medical expenses and rejected the insurer's offers of $8,504 and $12,900, illustrating the "tension between the broad language of the release agreement and the parties' objective manifestations of their apparent common understanding of the release's more narrow scope." *Traweek*, 2021 WL 733085, at *5; *see also Williams v. Glash*, 789 S.W.2d 261, 262–65 (Tex. 1990) (reversing summary judgment based on mutual mistake).

Houston [1st Dist.] Dec. 15, 2020, no pet.) (mem. op.). The appellant, his wife, and their two children were rear-ended by the appellee. *Id.* The accident damaged the appellant's car and his knee. *Id.* A month after the accident, the appellant and his wife signed three virtually identical settlement releases with the appellee's insurer—the only differences were the named family members and the dollar amounts. *Id.* The first and second releases were signed by the appellant and his wife as to each child for $250. *Id.* The third release was signed by the appellant and his wife for $500. *Id.*

The insurer sent four checks payable to the appellant and his wife: (1) a $250 check with their daughter's name; (2) a $250 check with their son's name; (3) a $500 check listing the appellant's wife's name; and (4) a $951.26 check listing the appellant's name. *Id.* It also sent two checks directly to the body shop handling the car repairs. *Id.* at *1 n.1. The four checks sent to the appellant and his wife listed the same claim number that appeared on the three releases. *Id.* at *4, *5. None of the releases listed the $951.26 in the fourth check. *Id.* at *5.

The appellant and his wife deposited the first three checks but did not deposit the fourth check, rejecting it because the appellant's medical bills exceeded that amount. *Id.* at *1. After the insurer claimed that the third release had released all the appellant's claims, the appellant sued and, in response to a summary-judgment motion on release, argued that he had signed the third release to settle only his derivative loss-of-consortium claims and not to release his own personal-injury claims. *Id.* at *2.

The appellant argued that the settlement checks contradicted the third release's plain language, raising a genuine issue of material fact regarding whether the parties had intended for that release to cover his individual-capacity claims. *Id.* To his response, he attached the six checks, his deposition testimony, the three release agreements, and the motor-vehicle-crash report. *Id.* In his deposition, the appellant testified, "I signed a release for my wife. I did not sign a release for myself," and he stated that he had rejected the $951.26 check because his orthopedic-treatment costs had exceeded that amount. *Id.* at *5.

Our sister court concluded that the third release was susceptible to two reasonable interpretations: (1) a release of only the appellant's loss-of-consortium claim and (2) a release of both his claims for loss of consortium and for negligence. *Id.* Based on the latent ambiguity, the court determined that the trial court erred by granting summary judgment on the appellant's claim because a genuine issue of material fact existed about the parties' intent. *Id.*

## B. Application

The CSAR defined "Plaintiff" to include Ramos individually, in contrast to the judgment in cause number 096-321522-20, which identified "Plaintiff" as Cristino and which approved the CSAR in settlement of Cristino's claims, with Ramos acting on Cristino's behalf as his next friend and legal guardian. *See* Tex. R. Civ. P. 44(2). The judgment in cause number 096-321522-20 does not address Ramos's individual claims. Although the CSAR attempted to dispose of claims "whether asserted

15

previously or not as to Defendant, including but not limited to those set out in Cause No. 096-321522-20," the March 2020 email chain, which refers to a single client—Cristino—and the settlement check made out to Cristino contradict the disposal of both Cristino's and Ramos's claims. *See Traweek*, 2021 WL 733085, at *5; *Lowe*, 2020 WL 7349506, at *2. That is, in context, the release is susceptible to two reasonable interpretations: (1) a release of all Cristino's and Ramos's claims and (2) a release of Cristino's claims and Ramos's derivative claims as his legal guardian. Appellees' Section 18.001 counter-affidavits, which were on file when the trial court granted summary judgment, show that Ramos began medical treatment in July 2020, indicating that she had a claim for individual injuries in addition to her derivative claims as to Cristino.

Viewing the evidence in the light most favorable to Ramos as the nonmovant and indulging every reasonable inference and resolving any doubts in her favor, *see Mann Frankfort*, 289 S.W.3d at 848; *20801, Inc.*, 249 S.W.3d at 399, we conclude that Ramos has met her burden to raise a genuine issue of material fact regarding ambiguity and meeting of the minds, and we sustain her sole issue.

## IV. Conclusion

Having sustained Ramos's sole issue, we reverse the trial court's judgment and remand the case for further proceedings.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  August 10, 2023